## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| J.D. IRVING, LTD.,<br>            Plaintiff,<br><br>      v.<br><br>UNITED STATES,<br><br>            Defendant. | Court No. 21-00641 |

## <u>DEFENDANT'S MOTION TO DISMISS</u>

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of International Trade, defendant, the United States, respectfully requests that the Court dismiss the complaint filed by plaintiff, J.D. Irving, Ltd. (J.D. Irving), because the Court does not possess subject-matter jurisdiction pursuant to 19 U.S.C. 1581(i), or because J.D. Irving lacks standing to bring the claim.  Alternatively, the complaint should be dismissed for failure to state a claim because the challenged determination is subject to binational panel review, which means this Court is statutorily barred from reviewing the determination, and can therefore provide no relief.

## <u>QUESTIONS PRESENTED</u>

1.      Whether this Court possesses jurisdiction pursuant to 28 U.S.C. § 1581(i) to review a determination that would have been properly reviewable pursuant to section 1581(c), but for a request for binational panel review of the determination, which provides the same potential relief as a section 1581(c) case heard in this Court.

2.      Whether J.D. Irving lacks standing when J.D. Irving's only alleged injury in fact involves the payment of cash deposits.

3.      Whether the complaint fails to state a claim upon which relief may be granted

because the statute, which provides for exclusive review by United States Mexico Canada

Agreement (USMCA) binational panels of determinations under 19 U.S.C. § 1675, when a

proper request for such panel review is made, bars this Court's review of the matter, regardless

of how it is framed by plaintiffs.

## STATEMENT OF FACTS

J.D. Irving is a Canadian producer and exporter of certain softwood lumber products

from Canada and an importer of record.  Compl. ¶ 8.  J.D. Irving was reviewed and assigned an

assessment rate of 1.57% for entries covered by the first antidumping duty administrative review

of certain softwood lumber products from Canada (period of review (POR) 2017-2018), which

set J.D. Irving's cash deposit rate at 1.57% as of November 30, 2020.  *Certain Softwood Lumber*

*Products From Canada*, 85 Fed. Reg. 76,519 (Dep't of Commerce Nov. 30, 2020).  Commerce

initiated an administrative review of J.D. Irving for entries subject to the second administrative

review (POR 2019) on March 10, 2020.  Before the second administrative review was

completed, Commerce initiated the third administrative review (POR 2020) on March 4, 2021,

with no party requesting review of J.D. Irving; accordingly, Commerce instructed CBP to

liquidate J.D. Irving's 2020 POR entries at the cash deposit rate in effect on the date of entry.

(*i.e.,* 1.57 percent).

After the 2020 POR entries were entered at the 1.57 percent cash deposit rate, Commerce

completed the second administrative review (2019 POR) and assessed J.D. Irving's second

review entries a rate of 11.59%.  Consistent with the final results of the second administrative

review, on December 2, 2021, Commerce issued cash deposit instructions directing CBP to

require cash deposits on subsequent entries at the 11.59% rate.  Importantly, J.D. Irving raised its

dissatisfaction with Commerce's statutory interpretation with respect to setting its cash deposit rate during the administrative review, and Commerce addressed it in its final results.  *See* IDM at 41-42.

J.D. Irving filed a notice of intent to seek judicial review of Commerce's final results of the second administrative review with the USMCA Secretariat on December 21, 2021, *see* Compl. at Attachment 4, but certain Canadian parties requested USMCA binational panel review on December 28, 2021.  Compl. ¶ 5.  Pursuant to statute, a party filing notice of a request for a panel review supplants another party's intent to seek review before this Court.  19 U.S.C. § 1516a(g)(3)(B).

On December 30, 2021, J.D. Irving filed its complaint in this Court, asking this Court to order that the rate assigned in the first review and used in the third review (1.57 percent) be deemed its cash deposit rate going forward.  Compl. at Prayer for Relief (asking this Court to "Order Commerce to instruct CBP (1) to reinstate J.D. Irving's lawful AD cash deposit rate of 1.57% for imports of subject merchandise produced and exported by J.D. Irving entered on or after December 2, 2021, and (2) to refund AD cash deposits provided for such entries in excess of the 1.57% rate.")  The complaint similarly asks this Court to review Commerce's determination in the second administrative review (*i.e.*, the review where J.D. Irving was assigned an 11.59 percent rate).  *Id.* (asking the Court to "Hold and declare that it was unlawful for Commerce to issue Cash Deposit Instructions assigning J.D. Irving the AD cash deposit rate determined for Non-Selected Companies in the final results of the 2019 AD review.")

## SUMMARY OF THE ARGUMENT

J.D. Irving asserts that jurisdiction is proper pursuant to 28 U.S.C. § 1581(i) because any relief it can obtain through the USMCA[1] panel review will be manifestly inadequate. But J.D. Irving can obtain review of that rate through the already-initiated USMCA panel review, which will consider Commerce's final results and J.D. Irving's argument that Commerce is misinterpreting the statute. The USMCA panel process is, therefore, not "manifestly inadequate"—it is the same. At the conclusion of the process, if J.D. Irving prevails, it will receive a refund of any overpaid deposits, with interest.

What J.D. Irving *really* wants is to not pay *current* cash deposits at the rate assigned in the second administrative review. It tries to use the chronology and posture of this case as justification, but nothing about the chronology is unusual—it is frequently the case that parties receive a carried-over rate when no review is requested, even in the midst of a prior review. It is not a calculated rate, though, pursuant to the statute and therefore cannot be used in place of a new, calculated rate such as the one assigned in the second administrative review.

Moreover, even assuming that the relief available to J.D. Irving under a USMCA panel would be manifestly inadequate and that the statute does not bar this Court's review, this Court lacks jurisdiction because J.D. Irving's only alleged injury is the payment of cash deposits. As this Court has held, the payment of cash deposits does not establish standing because it is not an injury in fact—any overpayment of cash deposits would be returned with interest upon the determination of ultimate duty liability through the panel review.

Finally, Commerce determined J.D. Irving's assessment rate and issued cash deposit

---

[1] United States – Mexico – Canada Agreement Art. 10.12, U.S.-Mex.-Can, Nov. 30, 2018 (entered into force July 1, 2020) (USMCA).

instructions consistent with that assessment rate in the second administrative review under 19

U.S.C § 1675(a)(2)(C).  Because the challenged final results were conducted pursuant to 19

U.S.C. § 1675, this Court's review of the matter is precluded by statute, which provides for

exclusive USMCA binational panel review, if requested, pursuant to 19 U.S.C. § 1516a(g)(2).

Therefore, the Court can provide no relief and the complaint should be dismissed pursuant to

Rule 12(b)(6).

## ARGUMENT

### I.   Standard Of Review

On a motion to dismiss for lack of jurisdiction, the factual allegations in the complaint are

not controlling and only uncontroverted factual allegations are accepted as true.  *Shoshone*

*Indian Tribe of the Wind River Reservation v. United States*, 672 F.3d 1021, 1030 (Fed. Cir.

2012).  In deciding such a motion, the Court may review evidence extrinsic to the pleadings. *Id*.

If a defendant challenges the jurisdiction of the Court, the plaintiff cannot rely merely upon

allegations in the complaint, but must bring forth relevant, competent proof to establish

jurisdiction.  *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).

The Court's determination of subject matter jurisdiction is a threshold inquiry.  *Steel Co.*

*v. Citizens For A Better Environment*, 523 U.S. 83, 94-95 (1998).  It is not defendant's burden to

demonstrate jurisdiction.  Rather, the plaintiff bears the burden of establishing that jurisdiction is

appropriate.  *See McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936).  The

jurisdiction of the federal courts, pursuant to the Constitution, is constrained to those cases which

involve "actual cases or controversies."  *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 37

(1976); *see* U.S. Const. art. III, § 2, cl. 1.  A necessary component of establishing a case or

controversy pursuant to Article III is standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560 (1992).  To establish standing, a plaintiff must show an "injury in fact" that is "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical."  *Id.* (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim, the Court must decide whether the plaintiff has raised factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Section 1581 of Title 28 provides a waiver of sovereign immunity over a specified class of cases.  *Humane Society of the United States v. Clinton*, 236 F.3d 1320, 1328 (Fed. Cir. 2003). Waivers of sovereign immunity are strictly construed, and any ambiguities must be resolved in favor of immunity.  *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1993); *United States v. Mitchell*, 445 U.S. 535, 538 (1980).

## II.     The Court Does Not Possess Jurisdiction Pursuant To 28 U.S.C. § 1581(i) Because Jurisdiction Would Have Been Proper Pursuant To 28 U.S.C. § 1581(c)

J.D. Irving asks this Court to both review Commerce's assignment of an 11.59 percent rate in the second administrative review, and to order Commerce to instruct CBP, right now, to use the cash deposit rate assigned in the first review and used in the third – 1.57 percent – notwithstanding the intervening release of Commerce's determination in the second administrative review.  J.D. Irving acknowledges that the Court's jurisdiction over this matter "would normally lie under 28 U.S.C. § 1581(c)," but nevertheless asserts that jurisdiction is proper pursuant to 28 U.S.C. § 1581(i) because any relief J.D. Irving can obtain through the USMCA binational panel, which has been elected in lieu of review in this Court, will be "manifestly inadequate."  Compl. ¶¶ 4-7.  It is long-settled that, "to prevent circumvention of the administrative processes crafted by Congress, jurisdiction under subsection 1581(i) may not be invoked if jurisdiction under another subsection of 1581 is or could have been available, unless

the other subsection is shown to be manifestly inadequate." *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1292 (Fed. Cir. 2008) (citing *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006)).

Here, assuming this framework even applies, 1581(c) jurisdiction is effectively available before the USMCA panel, and that panel can review the results of the second administrative review – where J.D. Irving was assigned the 11.59 percent rate it now contests – thus, any relief provided by the panel will not be manifestly inadequate.  Indeed, USMCA's dispute settlement provisions would be rendered a nullity if parties were able to ignore the statute and claim 1581(i) jurisdiction before this Court when another party requests panel review.

Congress, in enacting the USMCA,  preserved the panel jurisdiction established under the North American Free Trade Agreement,[2] which was established by specific reference to particular determinations, review of which—absent the interposition of binational panel review—is within the sole purview of this Court.[3]  In 19 U.S.C. § 1516a(g)(1), Congress explicitly provided that binational panels would have some of the exclusive original jurisdiction granted to this Court under 19 U.S.C.§ 1516a(a).[4]  In 19 U.S.C. § 1516a(g)(2)(A), Congress replaced 19 U.S.C. § 1516a(a) review by the Court with panel review in cases involving Canada or Mexico.  Pursuant to 19 U.S.C. § 1516a(g)(2), that jurisdiction is concurrent with this Court's

---

[2] North American Free Trade Agreement, Dec. 17, 1992, United States-Canada-Mexico, Chapter 19, 32 I.L.M. 289 (entered into force Jan. 1, 1994).

[3] *Compare* 19 U.S.C. § 1516a(a) (listing the determinations over which the Court of International Trade has exclusive jurisdiction) *with* 19 U.S.C. § 1516a(g)(1) & (2) (providing binational panels exclusive review of certain determinations over which the Court of International Trade would have exclusive review but for a proper request for binational panel review).

[4] Not all decisions reviewable by the Court of International Trade are reviewable by USMCA panels.  19 U.S.C. § 1516a(g)(1) (enumerating the determinations subject to panel review). Additionally, section 1516a(g)(3) describes exceptions to the exclusive jurisdictional grant to USMCA panels.  Those decisions remain reviewable by the Court of International Trade.

jurisdiction until such time that a request for USMCA panel review is made.  If no request for panel review is made and a proper notice is timely filed indicating an intent to seek judicial review, the Court retains jurisdiction over the action.  19 U.S.C. § 1516a(g)(3)(B).  If a proper request for panel review is made, a USMCA panel has exclusive jurisdiction over the action.  19 U.S.C. § 1516a(g)(2).  USMCA panels, having derived their jurisdiction from the original exclusive jurisdiction of this Court, are thus empowered by Congress to sit in place of this Court for certain antidumping and countervailing duty determinations.

While acknowledging that its claims would normally fall under section 1581(c), J.D. Irving nevertheless asserts that its case falls under section (i) because USMCA panels "lack equitable powers."  Compl. ¶ 6.  That is true:  USMCA panels do lack equitable powers.  But the "equitable" relief JD Irving seeks – to preserve its 1.57 percent cash deposit rate automatically assigned to entries during the third period of review, even though the results of the second administrative review have now been issued – is not of the type even *this Court* can grant.  The payment of a cash deposit – which will be refunded, with interest, if an assessment rate is later adjusted – is not an injury that this Court can cure.  By statute, final results issued in administrative reviews "shall be the basis for the assessment of countervailing or antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties."  19 U.S.C. § 1675(a)(2)(C).

Because the parties agree that USMCA panels lack equitable powers, we need not address J.D. Irving's irrelevant comparison of the Court's authority to enjoin the liquidation of entries with the lack of such authority for USMCA binational panels.[5]  *See* Compl. ¶ 6.  Indeed,

---

[5] The statute provides for the continued suspension of liquidation upon request for entries subject to binational panel review and Commerce's regulations provide for such suspension.  19 U.S.C § 1516a(g)(5)(C); 19 C.F.R. § 356.8.

the assertion distracts from the true nature of J.D. Irving's claim: J.D. Irving is not complaining about liqudation; rather it is dissatisfied *now* with the 11.59 percent cash deposit rate assigned based upon its assessed rate in the most recently completed review, *i.e.*, the second review, and would prefer to maintain its previously automatically-assigned cash deposit rate of 1.57 percent from the truncated third review so that it pays that lower rate for its entries *currently* coming into the country.  It is this "true nature" of J.D. Irving's claims that controls.  *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006) ("As we have noted, 'mere recitation of a basis for jurisdiction, by either a party or a court, cannot be controlling ... we look to the true nature of the action in the district court in determining jurisdiction of the appeal.'") (citation omitted).

The relief J.D. Irving can gain before the USMCA panel is not "manifestly inadequate" because, if the panel were to rule that Commerce's second review final results (including the antidumping duty rate) were not supported by substantial evidence or in accordance with law, the panel can remand the final results to Commerce to reach a new determination consistent with its decision.  To the extent that J.D. Irving believes it should not have to pay the new cash deposit rate now, before an adjudication of the issue, there is simply no authority for that assertion.

And if J.D. Irving believes that Commerce would decline to issue new cash deposit instructions to CBP even if a USMCA panel ruled in J.D. Irving's favor, such a belief is contrary to the plain terms of the statute.  Pursuant to 19 U.S.C. § 1675(a)(2)(c), Commerce's administrative review "shall be the basis for the assessment of countervailing or antidumping duties on entries of merchandise covered by the determination *and for deposits of estimated duties*."  (Emphasis added).  Because of the plain language of the statute, J.D. Irving's purported need for the Court's equitable powers is unnecessary:  Commerce is directed *by statute* to issue

cash deposit instructions consistent with its determinations in administrative reviews and – just as it did at the conclusion of the second review – Commerce would take such action consistent with any panel-affirmed remand determination.

In short, J.D. Irving acknowledges that this Court's jurisdiction would normally arise under 19 U.S.C. § 1581(c), and the same relief available to J.D. Irving from this Court pursuant to section 1581(c) is available through USMCA panel review.  Therefore, J.D. Irving has failed to articulate why the relief it seeks would be manifestly inadequate merely because this matter is before a USMCA panel.  Because "jurisdiction under subsection 1581(i) may not be invoked if jurisdiction under another subsection of 1581 is or could have been available, unless the other subsection is shown to be manifestly inadequate" this Court does not possess subject matter jurisdiction to consider JD Irving's assertions under § 1581(i).  *Hartford Fire*, 544 F.3d at 1292. J.D. Irving is entitled to no more relief than what the statute affords.

## II.   J.D. Irving's Payment Of Cash Deposits Is Not An "Injury In Fact" That Confers Standing

In addition to the statutory bars to the Court considering the complaint, J.D. Irving also lacks standing.  J.D. Irving seeks to have this Court order Commerce to reinstate a lower cash deposit rate for J.D. Irving's entries even though the 11.59 percent cash deposit rate was lawfully assigned.  Evidently, J.D. Irving prefers the 1.57 percent cash deposit rate continued from the first review and assigned to J.D. Irving as an automatic assessment rate (the as-entered rate) when no party requested review of J.D. Irving in the third review.  Statute, however, directs otherwise.

Chronologically, the automatic liquidation instructions for J.D. Irving were issued with respect to the third review prior to the conclusion of the second review.  *See* Compl. Attachment 7 (Automatic Liquidation Instructions, dated Apr. 16, 2021); *Final Results* (dated Dec. 2, 2021).

Thus, for the timeframe between Commerce's issuance of the automatic liquidation instructions for the third review and its final results of the second review, J.D. Irving's entries entered with a cash deposit rate of 1.57 percent.  But, once Commerce finalized the second review, the cash deposit rate as a matter of law for entries made after December 2, 2021 became the assessment rate determined for J.D. Irving in the second review.  *See* 19 U.S.C. § 1675(a)(2)(C).

Cash deposits are paid as estimated duties on entries, but any excess cash deposits are returned, with interest, if a party's ultimate duty liability is determined to be less than the cash deposits paid.  *See* 19 U.S.C. § 1677g ("Interest shall be payable on overpayments and underpayments of amounts deposited on merchandise entered, or withdrawn from warehouse, for consumption . . . ."); Compl. Attachment 7 (Automatic Liquidation Instructions) ("Section {1677g} requires that CBP pay interest on overpayments or assess interest on underpayments of the required amounts deposited as estimated antidumping duties.").  This Court has held that "{t}he fact that Plaintiff paid cash deposits while the administrative review was pending does not create an injury sufficient to confer standing under the Constitution or the Court's jurisdictional statute."  *Zhanjiang Guolian Aquatic Products Co., Ltd. v. United States*, 991 F. Supp. 2d 1339, 1342 (Ct. Int'l Trade 2014) (citing *MacMillan Bloedel Ltd. v. United States*, 16 C.I.T. 331, 332-33 (1992)); *but see Hubbell Power Systems, Inc. v. United States*, 884 F. Supp. 2d 1283, 1330-32 (Ct. Int'l Trade 2012) (finding that a Chinese respondent company whose entries had been liquidated because of an importer error nevertheless had an interest in being reviewed because it would impact its separate rate status and cash deposit rate).

Pursuant to the statute, Commerce issues updated cash deposit instructions at the conclusion of an administrative review, and those cash deposit instructions remain in effect even if the administrative review is subject to litigation before this Court (or a USMCA panel).

Although this Court routinely issues statutory injunctions enjoining the *liquidation* of entries, the statute does not direct (or permit) the Court to enjoin Commerce from instructing CBP to collect cash deposits at a certain rate. *See* 19 U.S.C. § 1516a(c)(2) (providing, as injunctive relief, that the Court of International Trade "may enjoin the *liquidation* of some or all entries of subject merchandise covered by a determination . . ." (emphasis added)). Therefore, this matter is no different than any other in which a party believes its cash deposit rate should be lower: a party may either challenge the final results upon which the cash deposit instructions are based (in which case Commerce will update the cash deposit instructions if it reaches a new decision not in harmony with the final results), or request an administrative review of the suspended entries for which the cash deposits are paid. Far from being an "injury," this is no more than the same business decision that every importer must make when deciding whether to seek an administrative review of a period of review before results of a prior review are released. Because J.D. Irving's payment of cash deposits is not an "injury in fact" that is "concrete and particularized" as well as "actual or imminent," *see Lujan*, 504 U.S. at 560, J.D. Irving lacks standing to bring its claim.

III.    **The Statute Grants The USMCA Panel Exclusive Jurisdiction Over This Matter**

Finally, the statute explicitly bars this Court from considering determinations subject to a review request before a binational panel. By statute, if binational panel review is requested, "(A) the determination is not reviewable under subsection (a), and (B) no court of the United States has power or jurisdiction to review the determination on any question of law or fact by an action in the nature of mandamus or otherwise." 19 U.S.C. § 1516a(g)(2). Because this Court cannot interfere with the parties' election, the complaint thus fails to state a claim upon which relief may be granted. R.C.I.T. 12(b)(6).

As explained above, Congress, in enacting the USMCA, preserved the panel jurisdiction established under NAFTA, giving that body exclusive jurisdiction to consider certain administrative reviews, should a review by a panel be requested.[6]  *See* 19 U.S.C. § 1516a(g)(1). Notwithstanding this, J.D. Irving's complaint fails to explain why Commerce's assessment and cash deposit rates of 11.59 percent determined in the second review – a review currently subject to binational panel review – are not considered "question[s] of law or fact" addressed in the final results under 19 U.S.C. § 1675.

Importantly, J.D. Irving raised its dissatisfaction with Commerce's statutory interpretation with respect to setting its cash deposit rate during the administrative review, and Commerce addressed it in its final results.  *See* IDM at 41-42.  As Commerce explained, its determination of J.D. Irving's cash deposit complies with 19 U.S.C. § 1675(a)(2)(C), which provides that the "determination under this paragraph shall be the basis for the assessment of countervailing or antidumping duties on entries of merchandise covered by the determination *and for deposits of estimated duties*."  (Emphasis added)).

In sum, J.D. Irving contests the second administrative review conducted under 19 U.S.C § 1675, and the issue itself is based on Commerce's compliance with section 1675.  Because this Court is barred from reviewing determinations under section 1675 if they are subject to a USMCA review request, including any "question of law or fact," this Court is prevented by statute from reviewing J.D. Irving's claim, and can provide no relief.  19 U.S.C. § 1516a(g)(2).

---

[6] *Compare* 19 U.S.C. § 1516a(a) (listing the determinations over which the Court of International Trade has exclusive jurisdiction) *with* 19 U.S.C. § 1516a(g) (providing binational panels exclusive review of certain determinations over which the Court of International Trade would have exclusive review but for a proper request for binational panel review).

## **CONCLUSION**

For these reasons, we respectfully request that the Court dismiss the complaint for lack of jurisdiction, or alternatively for failure to state a claim.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

OF COUNSEL:                         /s/Kelly a. Krystyniak
PAUL K. KEITH                        KELLY A. KRYSTYNIAK
Senior Attorney                      Trial Attorney
U.S. Department of Commerce          U.S. Department of Justice
Office of the Chief Counsel for Trade   Civil Division
   Enforcement and Compliance        Commercial Litigation Branch
1401 Constitution Avenue, NW         P.O. Box 480
Washington, D.C. 20230               Ben Franklin Station
Tel: (240) 449-5852                  Washington D.C. 20044
Email: paul.keith@trade.gov          Tel: (202) 307-0163
                                     Fax: (202) 514-8640
                                     Email: Kelly.a.krystyniak@usdoj.gov

Dated:  March 4,  2022                Attorneys for Defendant

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which the brief was prepared, this brief contains a total of 4257 words.

s/ Kelly A. Krystyniak

March 4, 2022

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| J.D. IRVING, LTD.,<br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES,<br>                    Defendant. | Court No. 21-00641 |

## <u>ORDER</u>

On consideration of defendant's motion to dismiss, plaintiff's response, and all other papers, it is hereby;

ORDERED that the motion is granted and, it is further;

ORDERED that the complaint is dismissed with prejudice.

IT IS SO ORDERED.

Dated: _____                    _____