UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| J.D. IRVING, LIMITED,<br><br>     Plaintiff,<br><br>  v.<br><br>UNITED STATES and U.S.<br>DEPARTMENT OF COMMERCE,<br><br>    Defendants. | Court No. 21-00641 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff J.D. Irving, Limited ("J.D. Irving" or "Plaintiff") respectfully requests that the Court deny Defendant's motion to dismiss this action.  J.D. Irving raises a novel legal claim before this Court:  that the U.S. Department of Commerce ("Commerce") violated U.S. law (19 U.S.C. § 1675(a) and 19 C.F.R. § 351.212(c)(1)) by instructing U.S. Customs and Border Protection ("CBP") to replace J.D. Irving's antidumping ("AD") duty cash deposit rate for 2020 with a cash deposit rate calculated in an administrative review covering a prior period, 2019.  The only remedy for Commerce's unlawful action is a court-ordered injunction requiring Commerce to instruct CBP:  (1) to reinstate J.D. Irving's lawful AD deposit rate retroactively, and (2) to refund excess AD cash deposits paid at the 2019 rate.  The U.S. Court of International Trade has the equitable power to provide this relief – and did so in *Cooper Tire*.  A binational panel established under Article 10.12 of the United States-Mexico-Canada Agreement ("USMCA") does not.  Consequently, although a USMCA panel will decide appeals of Commerce's final results in the

2019 administrative review, this Court retains jurisdiction to entertain J.D. Irving's challenge to Commerce's unlawful cash deposit instructions to CBP under 28 U.S.C. § 1581(i).

In asking this Court to dismiss J.D. Irving's Complaint, Defendant:  (1) disregards the Commerce action challenged by Plaintiff; (2) wrongly argues that a USMCA panel could provide adequate relief despite lacking injunctive power, and ignores valid precedent in claiming that even this Court lacks the authority to provide the injunctive relief J.D. Irving seeks; and (3) misinterprets case law and misstates J.D. Irving's legal claim in arguing that Plaintiff lacks standing.  For these reasons, Defendant's motion to dismiss J.D. Irving's Complaint must fail.  USMCA panel review is not meant to bar plaintiffs from obtaining adequate relief for unlawful actions by Commerce.

## PROCEDURAL BACKGROUND AND STATEMENT OF FACTS

The AD duty order on certain softwood lumber products from Canada ("*Softwood Lumber from Canada*") was published on January 3, 2018.  *See Certain Softwood Lumber Products from Canada*, 83 Fed. Reg. 350 (Dep't Commerce Jan. 3, 2018).  Consequently, requests for administrative reviews under the AD duty order may be submitted in January of each year, the anniversary month of the order's publication.  *See* 19 C.F.R. § 351.213(b).

"In making a decision whether or not to request an administrative review of certain entries, the parties rely on the cash deposit rate then in force for those entries."  *Federal-Mogul Corp. v. United States*, 822 F. Supp. 782, 788 (Ct. Int'l Trade 1993)  In January 2021, when review requests for the 2020 period of review were due in the *Softwood Lumber from Canada* AD proceeding, J.D. Irving's AD cash deposit rate was 1.57%.  *See Certain Softwood Lumber Products from Canada*, 85 Fed. Reg. 76519, 76520–21 (Dep't Commerce Nov. 30, 2020) (final results 2017-2018 AD review) (assigning a 1.57% AD cash deposit rate to J.D. Irving as a "Non-Selected Company").  No party – neither J.D. Irving nor a domestic producer – requested an AD review of J.D. Irving

2

for the 2020 POR.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 12599, 12603 (Dep't Commerce Mar. 4, 2021) (omitting J.D. Irving from the list of Canadian producers/exporters subject to the year-2020 AD review) (Compl. Attachment 6). Consequently, in accordance with 19 C.F.R. § 351.212(c)(1), Commerce instructed CBP to assess AD duties on J.D. Irving's year-2020 entries at the AD cash deposit rate applicable upon entry of the merchandise, and to continue to use 1.57% as the company's AD cash deposit rate going forward.  *See* Commerce Automatic Liquidation Instructions, Message No. 1106404 (A-122-857) (Apr. 16, 2021) at ¶¶2 & 5 (Compl. Attachment 7).

On May 20, 2021, Commerce issued the preliminary results in the 2019 AD review for the *Softwood Lumber from Canada* AD proceeding ("2019 AD Review").  *See Certain Softwood Lumber Products from Canada*, 86 Fed. Reg. 28551 (Dep't Commerce May 27, 2021) (prelim. results 2019 AD review) (Compl. Attachment 8) ("*2019 Review Prelim. Results*").  J.D. Irving was subject to the 2019 review, but, like hundreds of other Canadian producers/exporters, was not selected as a mandatory respondent.  *See id.* at 28552–54.  Consequently, in accordance with its practice, Commerce assigned such "Non-Selected Companies" the weighted average of the mandatory respondents' preliminary dumping margins, a preliminary rate of 12.05%.  *See id.* at 28551.  Commerce also indicated that, upon issuance of the final results in the 2019 review, the final "Non-Selected Companies Rate" would serve as both (1) the rate at which ***final AD duties*** would be assessed on imports of subject merchandise from Non-Selected Companies with entry dates during the 2019 POR (*i.e.*, the ***assessment rate***) and (2) the rate at which cash deposits for ***estimated AD duties*** would be valued for imports of subject merchandise from Non-Selected Companies (including J.D. Irving) going forward (*i.e.*, the ***cash deposit rate***).  *See id.*

AMERICAS 112027270

On July 8, 2021, J.D. Irving submitted a case brief in the 2019 AD Review.  J.D. Irving argued that the 2019 Non-Selected Companies Rate could not lawfully become J.D. Irving's new AD *cash deposit rate* going forward.  *See* Case Brief of J.D. Irving, Limited (A-122-857) (July 8, 2021) at 1, 4–7 (Compl. Attachment 3) ("J.D. Irving Case Br.").  J.D. Irving noted that Commerce already had assigned the company an AD cash deposit rate for a more recent period – the 2020 period of review – in accordance with 19 C.F.R. § 351.212(c)(1).  *See id*. at 1, 4-5.  Citing legislative history to the Trade and Tariff Act of 1984, J.D. Irving explained that replacing the *2020* AD deposit rate with a *2019* deposit rate would violate Congress's intent for amending the administrative review provision, 19 U.S.C. § 1675(a), as well as 19 C.F.R. § 351.212(c)(1).  *See id.* 2, 6-7 (citing H.R. Report 98-1156, 98th Cong., 2nd Sess., at 181 (Oct. 5, 1984); H.R. Report 98-725, 98th Cong., 2nd Sess., at 22-23 (May 1, 1984); *Federal-Mogul*, 822 F. Supp. at 788).

On November 23, 2021, Commerce issued the final results in the 2019 AD Review, amending the Non-Selected Companies Rate to 11.59%.  *See Certain Softwood Lumber Products from Canada*, 86 Fed. Reg. 68471, 68472 (Dep't Commerce Dec. 2, 2021) (final results 2019 AD review) (Compl. Attachment 2) ("*2019 Review Final Results*").  Disagreeing with J.D. Irving's argument, Commerce announced that it would assign J.D. Irving a cash deposit rate "based on the final results" of the 2019 AD Review.  *See* Issues and Decision Memorandum for the Final Results of the 2019 Antidumping Duty Administrative Review (A-122-857) (Nov. 23, 2021) at 41-42 (Compl. Attachment 9) ("*2019 AD Review IDM*").  Commerce ignored J.D. Irving's principal argument that assigning the 2019 AD cash deposit rate to J.D. Irving would violate congressional intent for amending 19 U.S.C. § 1675(a).

On December 9, 2021, Commerce issued cash deposit instructions to CBP, changing J.D. Irving's AD cash deposit rate from the 2020 rate determined by operation of law under 19 C.F.R.

4

§ 351.212(c)(1)(ii) – 1.57% – to the rate determined in the 2019 AD Review – 11.59%.  *See* Commerce Cash Deposit Instructions, Message No. 1343410 (A-122-857) (Dec. 9, 2021) (Compl. Attachment 1) ("*Cash Deposit Instructions*").

On December 21, 2021, J.D. Irving timely provided notice to the U.S. and Canadian Secretaries of the USMCA, interested parties, and Commerce of its intent to commence judicial review of the *2019 Review Final Results* at the U.S. Court of International Trade (Compl. Attachment 4).  *See* 19 U.S.C. § 1516a(g)(3)(B).  On December 28, 2021, other interested parties requested binational panel review of Commerce's *2019 Review Final Results* under Article 10.12 of the USMCA, thereby transferring review of the *2019 Review Final Results* to a USMCA panel (Compl. Attachment 5).  *See* 19 U.S.C. § 1516a(g)(2)(B) (granting exclusive review of certain Commerce final determinations to a binational panel when requested by an interested party).

On December 30, 2021, J.D. Irving commenced this action to contest Commerce's *Cash Deposit Instructions*, invoking this court's jurisdiction under 28 U.S.C. § 1581(i).  J.D. Irving also filed a Motion for Expedited Briefing and Consideration.  In response, Defendant filed a motion to dismiss on March 4, 2022.

## ARGUMENT

This Court has jurisdiction to review Commerce's *Cash Deposit Instructions* under 28 U.S.C. § 1581(i).  Plaintiff raises a novel legal claim that the USMCA panel reviewing the *2019 Review Final Results* would be unable to remedy, and challenges Commerce's "administration and enforcement" of those final results – not the dumping rates calculated in the 2019 AD Review (which will be reviewed by the USMCA panel).  Defendant's motion to dismiss J.D. Irving's Complaint should be denied for three reasons.  First, Defendant wrongly argues that USMCA panel review of the *2019 Review Final Results* deprives this Court of jurisdiction.  Contrary to

AMERICAS 112027270

Defendant's assertion, J.D. Irving has not appealed Commerce's final determination in the 2019 AD Review; rather, J.D. Irving contests the *Cash Deposit Instructions* issued to CBP.  Second, Defendant is unable to demonstrate that a USMCA panel has the equitable power to remedy the legal error contested in J.D. Irving's Complaint (and, in fact, Defendant concedes USMCA panels lack such power).  Third, in arguing that J.D. Irving lacks standing, Defendant misinterprets the case law and misstates J.D. Irving's legal claim.

## I.     PLAINTIFF HAS SATISFIED ITS BURDEN TO DEMONSTRATE THE COURT'S JURISDICTION UNDER 28 U.S.C. § 1581(i)

Defendant notes that "the plaintiff bears the burden of establishing that jurisdiction is appropriate."  Def.'s Mot. to Dismiss at 5 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).  Here, J.D. Irving demonstrated in its Complaint that the Court has jurisdiction under 28 U.S.C. § 1581(i) to review Commerce's *Cash Deposit Instructions* because the relief available under any other subsection of § 1581 would be "manifestly inadequate."  *See* Compl. ¶¶2-7.  Moreover, the Court has jurisdiction under § 1581(i)(1)(D) because J.D. Irving challenges Commerce's "administration and enforcement" of the *2019 Review Final Results* through its issuance of unlawful *Cash Deposit Instructions* to CBP.

The court considers two factors when determining whether jurisdiction lies under § 1581(i):  (1) whether jurisdiction under another subsection of 1581 is or could have been available for review of plaintiff's claim, and, if so, (2) whether the relief provided under that other subsection of 1581 would be "manifestly inadequate."  *See*, *e.g.*, *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992) (citation omitted); *Erwin Hymer Grp. N.A., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019); *Ford Motor Co. v. United States*, 688 F.3d 1319, 1323 (Fed. Cir. 2012); *Intercontinental Chems., LLC v. United States*, 483 F. Supp. 3d 1232, 1237-38 (Ct. Int'l Trade 2020).

6

The novel legal issue presented in Plaintiff's Complaint originated in the 2019 AD Review. J.D. Irving participated in that review as an interested party, and argued in its case brief to Commerce that the AD cash deposit rate calculated for Non-Selected Companies in the 2019 review could not lawfully be assigned to J.D. Irving, which was already subject to a 2020 AD cash deposit rate. *See* J.D. Irving Case Br. (entirety).  Commerce rejected J.D. Irving's argument in the final results of the review. *See 2019 AD Review IDM* at 41-42.  Subsequently, J.D. Irving provided notice of its intent to commence judicial review of the *2019 Review Final Results* at the U.S. Court of International Trade (Compl. Attachment 4), but other interested parties requested binational panel review of that determination under Article 10.12 of the USMCA (Compl. Attachment 5). Consequently, a USMCA panel will review parties' appeals of the *2019 Review Final Results*. *See* 19 U.S.C. § 1516a(g)(2)(B).

This Court has recognized that, "{i}f plaintiff could have invoked 28 U.S.C. § 1581(c) but the remedy under this provision would have been manifestly inadequate, then jurisdiction under § 1581(i) would still be available." *Intercontinental Chems.*, 483 F. Supp. 3d at 1240-41 (citing *Consol. Bearings Co. v. United States*, 166 F. Supp. 2d 580, 583 (Ct. Int'l Trade 2001)).  Here, although a USMCA panel could review the merits of J.D. Irving's legal claim – *i.e.*, that it was unlawful for Commerce to assign J.D. Irving a 2019 AD cash deposit rate – USMCA panels lack the equitable power to provide the relief J.D. Irving seeks:  an injunction ordering Commerce to instruct CBP (1) to reinstate J.D. Irving's 2020 AD cash deposit rate (1.57%) as of December 2, 2021 (the publication date of the *2019 Review Final Results*), and (2) to refund excess AD cash deposits (*i.e.*, amounts paid in excess of the 1.57% AD cash deposit rate) provided for imports of subject merchandise produced and exported by J.D. Irving with entry dates on or after December 2, 2021.  *See* Compl. ¶3 & Prayer for Relief.  The U.S. Court of International Trade has the

7

equitable power to provide this relief, and *has* provided such injunctive relief in setting aside an unlawful AD cash deposit rate. *See Cooper Tire & Rubber Co. v. United States*, 217 F. Supp. 3d 1373, 1377, 1384 (Ct. Int'l Trade 2017) ("*Cooper Tire I*") (holding that the AD cash deposit rate assigned to plaintiff was unlawful); *Cooper Tire & Rubber Co. v. United States*, No. 15-00251, 2017 Ct. Intl. Trade LEXIS 131, at *8-10 (Ct. Int'l Trade Sept. 25, 2017) ("*Cooper Tire II*") (issuing an injunction ordering Commerce to apply the lawful AD cash deposit rate retroactively and to instruct CBP to refund excess cash deposits).[1]

USMCA panels, in contrast, lack equitable powers – a point Defendant concedes. *See* Def.'s Mot. to Dismiss at 8 ("That is true:  USMCA panels do lack equitable powers."). Consequently, J.D. Irving could not obtain meaningful relief through USMCA binational panel review of the *2019 Review Final Results*:  If J.D. Irving were to prevail on its claim, the USMCA panel would be unable to order Commerce to instruct CBP to reinstate J.D. Irving's 2020 AD cash deposit rate *retroactively*, depriving J.D. Irving of relief from Commerce's unlawful decision to replace J.D. Irving's 2020 rate with an AD cash deposit rate for 2019.  Because any relief J.D. Irving could obtain through USMCA panel review of the *2019 Review Final Results* would be "manifestly inadequate" (if not nonexistent), the Court has jurisdiction under § 1581(i) to review Commerce's *Cash Deposit Instructions*.  *See Intercontinental Chems.*, 483 F. Supp. 3d at 1240-41.  Only the injunctive relief requested by J.D. Irving can remedy Commerce's unlawful assignment of the 2019 AD cash deposit rate to J.D. Irving.

Furthermore, unlike the appeals of the *2019 Final Review Results* before the USMCA panel, J.D. Irving's appeal of Commerce's *Cash Deposit Instructions* does *not* concern the final

---

[1] Notably, Defendant's Motion to Dismiss fails to address the *Cooper Tire* cases, even though J.D. Irving cited them in the Jurisdiction section of its Complaint.  *See* Compl. ¶4.

dumping rates calculated by Commerce or the subject imports covered by the review (*i.e.*, imports of subject merchandise ***entered during calendar year 2019***).   Rather, J.D. Irving challenges Commerce's unlawful instructions directing CBP to replace J.D. Irving's 2020 AD deposit rate with a 2019 AD deposit rate – for subject imports (produced and exported by J.D. Irving) ***entered on or after December 2, 2021***.  So viewed, this action is not a challenge to the *2019 Final Review Results*, but rather a challenge to Commerce's "administration and enforcement" of those final results through its issuance of *Cash Deposit Instructions* to CBP – an action for which jurisdiction lies under 28 U.S.C. § 1581(i)(1)(D).  *Cf. Consol. Bearings Co. v. United States*, 348 F.3d 997, 1002 (Fed. Cir. 2003) (finding jurisdiction under § 1581(i) because "an action challenging Commerce's liquidation instructions is not a challenge to the final results, but a challenge to the 'administration and enforcement' of those final results"); *see also Michaels Stores, Inc. v. United States*, 931 F. Supp. 2d 1308, 1312-13 (Ct. Int'l Trade 2013) (exercising jurisdiction under § 1581(i) to review Commerce's cash deposit and liquidation instructions).[2]

## II.   DEFENDANT MISIDENTIFIES THE AGENCY ACTION PLAINTIFF HAS APPEALED

Defendant wrongly argues that J.D. Irving's Complaint should be dismissed for failure to state a claim upon which relief may be granted.  *See* Def.'s Mot. to Dismiss at 12-13 (citing U.S. Ct. Int'l Trade R. 12(b)(6)).  Citing 19 U.S.C. § 1516a(g)(2), Defendant argues the Court is barred

---

[2]  In the alternative, if Commerce's *Cash Deposit Instructions* could be considered a reviewable determination under 19 U.S.C. § 1516a(a)(2)(B) ("{a} final determination . . . by the administering authority . . . under section 1675"), the court would still have jurisdiction under 28 U.S.C. § 1581(i) because any remedy provided by a USMCA panel would remain "manifestly inadequate" (for lack of authority to grant equitable or injunctive relief).  Furthermore, if the court's jurisdiction to review Commerce's *Cash Deposit Instructions* lies under 28 U.S.C. § 1581(c) but the *Cash Deposit Instructions* are not reviewable by a USMCA panel under 19 U.S.C. § 1516a(g)(1), J.D. Irving timely commenced this appeal through the filing of a Summons and Complaint within 30 days of the date Commerce issued the *Cash Deposit Instructions* (on December 9, 2021).

AMERICAS 112027270

from reviewing J.D. Irving's claim because Commerce's *2019 Review Final Results* are subject to USMCA panel review.  *See* Def.'s Mot. to Dismiss at 12-13.  In this action, however, J.D. Irving does not contest the *2019 Review Final Results.*

Section 1516a(g)(2) deprives the court of jurisdiction to review an agency "determination" – here the *2019 Review Final Results* – for which USMCA panel review has been requested.  19 U.S.C. § 1516a(g)(2); *see also* 19 U.S.C. § 1516a(g)(1) & (a)(B)(iii) (treating a "final determination . . . under section 1675" as a "determination" for purposes of § 1516a(g)(2)).  Here, however, J.D. Irving contests Commerce's *Cash Deposit Instructions – **not** the 2019 Review Final Results* (*i.e.*, the agency's final determination under 19 U.S.C. § 1675).  Unlike the appeals of the *2019 Final Review Results* before the USMCA panel, J.D. Irving's appeal does ***not*** concern the final dumping rates calculated by Commerce or subject imports covered by the 2019 period of review.  Rather, J.D. Irving challenges Commerce's *Cash Deposit Instructions*, which impermissibly direct CBP to replace J.D. Irving's AD cash deposit rate for 2020 with a deposit rate calculated in the 2019 AD Review, contrary to 19 U.S.C. § 1675(a) and 19 C.F.R. § 351.212(c)(1).  Because Defendant misidentifies the agency action Plaintiff has appealed, its motion to dismiss for failure to state a claim is meritless.

## III.   DEFENDANT WRONGLY ARGUES THAT J.D. IRVING COULD OBTAIN THE SAME RELIEF FROM A USMCA PANEL

In arguing that the Court lacks jurisdiction under § 1581(i), Defendant wrongly contends that Plaintiff could obtain adequate relief through USMCA panel review.  Defendant's argument fails for three reasons.  First, Defendant wrongly suggests that J.D. Irving could obtain adequate relief simply because it could raise the same legal issue before the USMCA panel.  Second, Defendant argues the Court lacks the authority to provide the requested relief, but ignores

10

applicable U.S. Court of International Trade precedent demonstrating the opposite.   Third, Defendant mischaracterizes the relief J.D. Irving seeks.

Initially, Defendant illogically suggests that a USMCA panel's mere review of J.D. Irving's legal claim would provide adequate relief.   According to Defendant, "1581(c) jurisdiction is effectively available before the USMCA panel, and that panel can review the results of the second administrative review – where J.D. Irving was assigned the 11.59 percent rate it now contests – thus, any relief provided by the panel will not be manifestly inadequate." Def.'s Mot. to Dismiss at 7.  The USMCA's mere ability to review the same legal issue, however, does not mean the panel can provide adequate relief.   As discussed above, J.D. Irving seeks injunctive relief:  an order requiring Commerce to instruct CBP (1) to reinstate J.D. Irving's lawful AD cash deposit rate (1.57%) retroactively as of December 2, 2021 (the publication date of the *2019 Review Final Results*), and (2) to refund AD cash deposits paid in excess of the lawful 1.57% rate.  *See* Compl. ¶3 & Prayer for Relief.  Whereas the U.S. Court of International Trade has the equitable power to provide such injunctive relief, *see Cooper Tire II* at *8-10, USMCA panels do not, *see* Def.'s Mot. to Dismiss at 8 ("That is true:  USMCA panels do lack equitable powers.").  Because any relief J.D. Irving could obtain through USMCA panel review of the *2019 Review Final Results* would be "manifestly inadequate," this Court retains jurisdiction to review Commerce's *Cash Deposit Instructions* under § 1581(i).  *See*, *e.g.*, *Intercontinental Chems.*, 483 F. Supp. 3d at 1240-41 ("If plaintiff could have invoked 28 U.S.C. § 1581(c) but the remedy under this provision would have been manifestly inadequate, then jurisdiction under § 1581(i) would still be available.").

Here, Defendant also raises a false alarm that "USMCA's dispute settlement provisions would be rendered a nullity if parties were able to ignore the statute and claim 1581(i) jurisdiction before this Court when another party requests panel review."  Def.'s Mot. to Dismiss at 7.  This is

AMERICAS 112027270

an inaccurate characterization of J.D. Irving's appeal.  Plaintiff's claim before this Court will not

nullify USMCA dispute resolution of the *2019 Review Final Results*.  Nor will Plaintiff's claim

have any bearing on adjudication of the issues raised in the USMCA panel proceeding.  In that

proceeding, parties raise issues concerning Commerce's calculations of the final dumping margins

assigned to the mandatory respondents, which, in turn, affect the final dumping margin assigned

to Non-Selected Companies subject to the review.  *See 2019 Review Final Results* at 68473 (listing

the issues raised); *2019 AD Review IDM* at 1-2 (same).  Before this Court, in contrast, J.D. Irving

raises a discrete legal issue that is unrelated to Commerce's calculations of final deposit and

assessment rates in the 2019 AD Review:  *i.e.*, whether Commerce lawfully instructed CBP to

apply the 2019 AD cash deposit rate to J.D. Irving in the first place.

Second, Defendant mistakenly claims this Court lacks authority to provide the equitable

relief J.D. Irving seeks.  According to Defendant, "{t}he payment of a cash deposit – which will

be refunded, with interest, if an assessment rate is later adjusted – is not an injury that this Court

can cure."  Def.'s Mot. to Dismiss at 8.  Defendant is wrong.  Congress vested the U.S. Court of

International Trade with "all the powers in law and equity of . . . a district court of the United

States{,}" 28 U.S.C. § 1585 – including the injunctive power to order Commerce to rescind an

unlawful AD cash deposit rate, and instruct CBP to reinstate a lawful cash deposit rate retroactively

and refund the importer excess cash deposits paid, *see Cooper Tire II* at *8-10.  Notably, even

though J.D. Irving cited the *Cooper Tire* cases in the Jurisdiction section of its Complaint, *see*

Compl. ¶4, Defendant's Motion to Dismiss fails to address these cases – in which the court

provided the same injunctive relief Plaintiff seeks here.

Third, and somewhat confusingly, Defendant mischaracterizes the relief J.D. Irving seeks.

Defendant states, "To the extent that J.D. Irving believes it should not have to pay the new cash

deposit rate now, **before an adjudication of the issue**, there is simply no authority for that assertion." Def.'s Mot. to Dismiss at 9 (emphasis added). J.D. Irving, however, does not request relief before the Court decides the merits of its legal claim. Rather, J.D. Irving respectfully requests injunctive relief if and when the Court holds that Commerce unlawfully instructed CBP to replace J.D. Irving's 2020 AD cash deposit rate with a 2019 AD cash deposit rate. *See* Compl. at Prayer for Relief.

Defendant also asserts that, "{a}t the conclusion of the {USMCA panel} process, if J.D. Irving prevails, it will receive a refund of any overpaid deposits, with interest." Def.'s Mot. to Dismiss at 4. Here, however, Defendant appears to be confusing "assessment" and "deposit" rates.[3] Under the statutory and regulatory scheme, "liquidation" – *i.e.*, the final assessment of duties owed, including AD duties – of J.D. Irving's imports entered during the 2019 period of review will remain suspended until conclusion of the USMCA panel-review process. *See* 19 U.S.C. § 1516(g)(5)(C)(i) (authorizing Commerce, in the event of USMCA panel review, to suspend liquidation of entries of merchandise covered by the final determination subject to the review); 19 C.F.R. § 356.8(a)-(c) (same).[4] If, as a result of USMCA dispute settlement, the final

---

[3] In the United States, AD duties are assessed on a "retrospective" basis. *See* 19 C.F.R. § 351.212(a). Upon entry of imports subject to an AD duty order, the importer provides CBP with cash deposits, the amount of which is calculated based on the foreign producer/exporter's **estimated rate** of dumping (*i.e.*, the **cash deposit rate**). *See Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F. 3d 1041, 1047 (Fed. Cir. 2012) ("{T}he cash deposits collected upon entry are considered estimates of the duties that the importer will ultimately have to pay as opposed to payments of the actual duties."). After importation, Commerce conducts an administrative review to determine the foreign producer/exporter's **actual rate** of dumping during the (normally) one-year period of review (*i.e.*, the **assessment rate**). 19 U.S.C. § 1675(a). Upon conclusion of the review, Commerce instructs CBP to assess final AD duties on imports entered during the period of review at the assessment rate, and to collect estimated AD duties on entries going forward at the cash deposit rate. *See* 19 U.S.C. § 1675(a)(2)(C).

[4] Importantly, these provisions authorize Commerce – not USMCA panels – to suspend liquidation. Again, USMCA panels lack equitable or injunctive powers. *See* 19 U.S.C. §

13

AD *assessment rate* is less than the AD *deposit rate* that applied at entry to subject merchandise imported *in 2019*, the period of review, then J.D. Irving will receive a refund of overpaid AD cash deposits provided for such imports (*i.e.*, with entry dates *in 2019*). *See* 19 U.S.C. § 1516a(g)(5)(B) & (C). J.D. Irving's appeal before this Court, however, concerns the AD cash deposit rate applicable to imports entered *on or after December 2, 2021*. Unlike the U.S. Court of International Trade, USMCA panels lack the equitable power to order Commerce to instruct CBP to reinstate J.D. Irving's lawful AD cash deposit rate retroactively as of December 2, 2021.

For these reasons, Defendant's arguments that J.D. Irving could obtain adequate relief through USMCA panel review are unfounded.

## IV.  IN ARGUING THAT PLAINTIFF LACKS STANDING, DEFENDANT MISCONSTRUES CASE LAW AND MISSTATES THE ISSUE

Defendant argues that J.D. Irving lacks standing for failure to show an "injury in fact," but misconstrues the case law and misstates the legal issue Plaintiff has raised. The cases on which Defendant relies – *Zhanjiang Guolian* and *MacMillan Bloedel* – are readily distinguishable and do *not* suggest an unlawful cash deposit rate fails to establish injury sufficient for purposes of standing. Moreover, Defendant ignores cases in which the U.S. Court of International Trade has accepted challenges to cash deposit rates assigned by Commerce. Defendant also misstates J.D. Irving's claim – suggesting J.D. Irving contests Commerce's *calculation* of the 2019 AD deposit rate when, in fact, Plaintiff challenges Commerce's *assignment* of the 2019 AD deposit rate to J.D. Irving as unlawful.

---

1516a(g)(5)(C) & (6) (indicating that USMCA panels lack the power to enjoin the liquidation of entries or provide injunctive relief); *see also* Stephen J. Powell, *Expanding the NAFTA Chapter 19 Dispute Settlement System:  A Way To Declaw Trade Remedy Laws in a Free Trade Area of the Americas?*, 16 Law & Bus. Rev. Am. 217, 232 (2010) (noting that treaty "{p}arties did not give such panels the equity powers that would be necessary to enforce their own decisions").

14

According to Defendant, "{t}his Court has held that '{t}he fact that Plaintiff paid cash deposits while the administrative review was pending does not create an injury sufficient to confer standing under the Constitution or the Court's jurisdictional statute.'"  Def.'s Mot. to Dismiss at 11 (citing *Zhanjiang Guolian Aquatic Products Co., Ltd. v. United States*, 991 F. Supp. 2d 1339, 1342 (Ct. Int'l Trade 2014) (citing *MacMillan Bloedel Ltd. v. United States*, 16 C.I.T. 331, 332-33 (1992)).  Neither case stands for such proposition.

In *Zhanjiang Guolian*, the court held that plaintiff (a foreign producer of merchandise subject to a countervailing duty ("CVD") investigation) lacked standing to challenge an International Trade Commission ("ITC") negative injury determination because no CVD order was issued.  *See* 991 F. Supp. 2d at 1342 ("{T}he fact that no CVD order has been issued means that Plaintiff is not suffering any injury due to the errors it alleges the ITC committed.").  In doing so, the court stated the following regarding cash deposits:  "Because no cash deposits are due at this time, and all previously paid deposits either have been or will be returned to the subject producers pursuant to statute, Plaintiff cannot claim monetary injury."  *Id*.  Following the court's logic, if cash deposits *were* owed and not to be refunded for lack of a CVD order, the plaintiff would have shown the requisite injury for standing.  Thus, contrary to Defendant's interpretation, *Zhanjiang Guolian* supports the proposition that an importer, such as J.D. Irving, could suffer the requisite level of injury for standing by virtue of an unlawful AD cash deposit rate.  In fact, in J.D. Irving's case, the unlawful AD deposit rate assigned by Commerce (11.59%) is more than seven times the lawful cash deposit rate (1.57%).

In *MacMillan Bloedel*, the court declined to find jurisdiction under § 1581(i) to entertain the plaintiff's appeal because Commerce's underlying CVD investigation was ongoing, and plaintiff would have an opportunity to challenge Commerce's final determination under § 1581(c).

AMERICAS 112027270

*See* 16 C.I.T. at 332-33.  In doing so, the court rejected plaintiff's argument "that § 1581(c) relief {would} come too late{,}" because "paying deposits ***pending court review*** is an ordinary consequence of the statutory scheme." *Id.* at 333 (emphasis added).  This language, too, falls short of holding that paying an unlawful AD cash deposit rate would fail to establish injury for purposes of standing.  Nor has J.D. Irving requested an injunction on CBP's collection of AD cash deposits at the unlawful 11.59% rate pending this Court's review.  Rather, J.D. Irving respectfully requests relief after the Court has addressed the merits of its legal claim.  *See* Compl. at Prayer for Relief.

Moreover, Defendant ignores cases in which the U.S. Court of International Trade has accepted challenges to cash deposit rates or instructions issued by Commerce.  In particular, Defendant fails to address *Cooper Tire*, which J.D. Irving cited in its Complaint.  *See* Compl. ¶4. In that case, the court reviewed the plaintiffs' challenge to a cash deposit rate set by Commerce in an AD investigation, and, thus, recognized that plaintiffs had standing to challenge the AD deposit rate.  *See Cooper Tire I*, 217 F. Supp. 3d at 1374 ("Plaintiffs challenge the antidumping duty cash deposit rate of 11.12% *ad valorem* that . . . Commerce . . . applied to imports of passenger cars and light truck tires that they produced and exported from the People's Republic of China.").  The U.S. Court of International Trade also has found jurisdiction under § 1581(i) to review challenges to Commerce's cash deposit instructions.  *See Michaels Stores*, 931 F. Supp. 2d at 1312-13 (exercising jurisdiction under § 1581(i) to review Commerce's cash deposit and liquidation instructions).  These cases demonstrate the court's recognition that plaintiffs have standing to challenge cash deposit rate instructions issued by Commerce.

Defendant also misstates the true nature of Plaintiff's claim, suggesting J.D. Irving challenges Commerce's ***calculation*** of the final dumping rate assigned to J.D. Irving in the 2019 AD Review (*i.e.*, the Non-Selected Companies Rate).  *See* Def.'s Mot. to Dismiss at 12 ("this

AMERICAS 112027270

matter is no different than any other in which a party believes its cash deposit rate should be lower"). J.D. Irving, however, does not contest Commerce's *calculation* of the Non-Selected Companies Rate in the 2019 AD Review; that issue will be addressed by the USMCA panel reviewing the *2019 Review Final Results*. Rather, Plaintiff challenges Commerce's unlawful decision to instruct CBP to apply the 2019 Non-Selected Companies Rate to J.D. Irving in the first place. Contrary to Defendant's assertions, that legal error cannot be remedied by a USMCA panel (which lacks the equitable power to correct an AD cash deposit rate retroactively) or by "request{ing] an administrative review of the suspended entries for which the cash deposits are paid." Def.'s Mot. to Dismiss at 12. Commerce's unlawful assignment of the 2019 AD deposit rate to J.D. Irving can only be remedied by an injunction ordering Commerce to instruct CBP (1) to reinstate J.D. Irving's lawful AD cash deposit rate retroactively (*i.e.*, apply the rate to J.D. Irving's subject imports entered on or after December 2, 2021) and (2) to refund AD cash deposits paid in excess of the lawful 1.57% deposit rate. Otherwise Commerce's unlawful action would evade remediation. Ultimate assessment at a lower AD duty rate would not address Commerce's legal error.

## V.    CONCLUSION

For these reasons, J.D. Irving respectfully requests that the Court deny Defendant's motion to dismiss.

<div style="margin-left: 40%;">

Respectfully submitted,

 /s/ Jay C. Campbell
Walter J. Spak
Jay C. Campbell
Cristina M. Cornejo
WHITE AND CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

</div>

Date:  March 14, 2022

<div style="text-align: center;">17</div>

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 2(B) of the Court's Standard Chambers Procedures, Plaintiff's counsel certifies that this response to Defendant's motion to dismiss complies with the Court's word-limitation rule.  According to the word count calculated by the word processing system with which the brief was prepared, this brief contains a total of 5,489 words.

/s/ Jay C. Campbell
Jay C. Campbell

Date:  March 14, 2022