Slip Op. 22-40

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **J.D. IRVING, LIMITED,** | |
| Plaintiff, | |
| v. | **Before: Timothy M. Reif, Judge** |
| **UNITED STATES AND U.S. DEPARTMENT OF COMMERCE,** | **Court No. 21-00641** |
| Defendants. | |

### OPINION

[Denying plaintiff's motion to expedite the briefing and consideration of the action.]

Dated: <u>May 2, 2022</u>

<u>Jay C. Campbell</u>, White and Case LLP, of Washington, D.C., argued for plaintiff. With him on the brief was <u>Walter Spak</u>.

<u>Kelly A. Krystyniak</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendants. With her on the brief were <u>Brian M. Boynton</u>, Acting Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Claudia Burke</u>, Assistant Director. Of counsel on the brief was <u>Paul K. Keith</u>, Senior Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

\* \* \*

Reif, Judge: Plaintiff, J.D. Irving, Limited, moves for the expedited briefing and

consideration of its action against defendants, the United States and the U.S.

Department of Commerce ("Commerce"), pursuant to U.S. Court of International Trade

("USCIT") Rule 3(g)(5). Pl.'s Mot. for Expedited Br. and Consideration ("Pl. Br."), ECF

No. 5. In this action, plaintiff contests the antidumping duty ("AD") cash deposit

instructions that Commerce issued to U.S. Customs and Border Protection ("Customs")

on December 9, 2021.  Compl. at 1, ECF No. 4; Cash Deposit Instructions for Certain

Softwood Lumber from Canada, Message No. 1343410 (A-122-857) (Dec. 9, 2021)

(Compl. Attach. 1) ("Commerce's Cash Deposit Instructions"); *Certain Softwood Lumber*

*Products from Canada: Antidumping Duty Order and Partial Amended Final*

*Determination* ("Softwood Lumber from Canada Order"), 83 Fed. Reg. 350 (Dep't of

Commerce Jan. 3, 2018) (antidumping duty order).  For the reasons discussed below,

the court denies plaintiff's motion.

## BACKGROUND

Plaintiff is a Canadian producer and exporter of merchandise subject to the

Softwood Lumber from Canada Order, as well as the importer of record.  Compl. at 5.

Commerce published the Softwood Lumber from Canada Order on January 3, 2018.[1]

*See* Softwood Lumber from Canada Order, 83 Fed. Reg. 350.

Commerce initiated a first administrative review ("AR 1") of the Softwood Lumber

from Canada Order on April 1, 2019.  *Certain Softwood Lumber Products from Canada:*

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg.

12,209, 12,209-10 (Dep't of Commerce Apr. 1, 2019) (initiation notice).  AR 1 covered

entries of subject merchandise made between June 30, 2017, and December 31, 2018.

*Certain Softwood Lumber Products from Canada: Final Results of Antidumping Duty*

---

[1] The anniversary month of Commerce's publication of the Softwood Lumber from
Canada Order is January.  *See* Softwood Lumber from Canada Order, 83 Fed. Reg.
350.  Accordingly, plaintiff and other interested parties are entitled to request each
January that Commerce conduct an administrative review to determine the antidumping
duties to be applied to entries of subject merchandise covered by the respective review.
*See* 19 U.S.C. § 1675(a); 19 C.F.R. § 351.213(b).

*Administrative Review; 2017-2018* ("AR 1 Final Results"), 85 Fed. Reg. 76,519, 76,519-

20 (Dep't of Commerce Nov. 30, 2020) (final results).  Plaintiff was not selected as a

mandatory respondent in this review; accordingly, upon the publication of the AR 1 Final

Results on November 30, 2020, Commerce assigned to plaintiff the non-selected

companies' assessment rate of 1.57%.  *See id.* at 76,520-21.  Further, pursuant to

section 751(a)(2)(C) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(a)(2)(C)

(2018),[2] Commerce instructed Customs to collect at this 1.57% rate cash deposits on

plaintiff's entries made on or after the publication date of the AR 1 Final Results.  *See*

*id.* at 76,520.

Commerce initiated a second administrative review ("AR 2") of the Softwood

Lumber from Canada Order on March 10, 2020.  *Initiation of Antidumping and*

*Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 13,860, 13,862 (Dep't of

Commerce Mar. 10, 2020) (initiation notice).  AR 2 covered entries of subject

merchandise made between January 1, 2019, and December 31, 2019.  *Certain*

*Softwood Lumber Products from Canada: Final Results of Antidumping Duty*

*Administrative Review; 2019* ("AR 2 Final Results"), 86 Fed. Reg. 68,471, 68,471-73

(Dep't of Commerce Dec. 2, 2021) (final results).  Plaintiff was not selected as a

mandatory respondent in this review.  Upon the publication of the AR 2 Final Results on

December 2, 2021, Commerce assigned to plaintiff a recalculated non-selected

companies' assessment rate of 11.59%.  *See id.* at 68,472-73.  In addition, Commerce

instructed Customs to collect at this 11.59% rate cash deposits on plaintiff's entries

---

[2] Further citations to the Tariff Act of 1930, as amended, are also to the relevant
portions of Title 19 of the U.S. Code, 2018 edition.

made on or after the publication date of the AR 2 Final Results. *See id.* at 68,473;
Commerce's Cash Deposit Instructions.

Following Commerce's initiation of an AR 2 on March 10, 2020, and prior to
Commerce's publication of the AR 2 Final Results on December 2, 2021, Commerce
initiated a third administrative review ("AR 3") of the Softwood Lumber from Canada
Order. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86
Fed. Reg. 12,599, 12,601 (Dep't of Commerce Mar. 4, 2021) (initiation notice).
Commerce initiated AR 3 — which covers entries of subject merchandise made
between January 1, 2020, and December 31, 2020 — on March 4, 2021. *Id.* In
contrast with AR 1 and AR 2, no parties requested that Commerce review plaintiff's
entries that would have been subject to an AR 3. *See id.* at 12,603; Compl. at 10.
Accordingly, Commerce instructed Customs to liquidate plaintiff's entries that would
have been subject to an AR 3 at the 1.57% rate then in effect, which had been assigned
to plaintiff in the AR 1 Final Results. *See* Automatic Liquidation Instructions for Certain
Softwood Lumber Products for the Period 01/01/2020 Through 12/31/2020, Message
No. 1106404 (A-122-857) (Apr. 16, 2021) (Compl. Attach. 7) ("Automatic Liquidation
Instructions"); AR 1 Final Results, 85 Fed. Reg. at 76,520; 19 C.F.R. § 351.212(c)(1)(i).
In addition, Commerce instructed Customs to continue to collect cash deposits on
plaintiff's entries at this 1.57% rate. *See* 19 C.F.R. § 351.212(c)(1)(ii) ("If [Commerce]
does not receive a timely request for an administrative review . . . , [Commerce] . . . will
instruct [Customs] to . . . continue to collect the cash deposits previously ordered.");
Automatic Liquidation Instructions; Cash Deposit Instructions for Certain Softwood
Lumber Product from Canada, Message No. 0343402 (A-122-857) (Dec. 8, 2020).

On January 31, 2022, plaintiff requested that Commerce review plaintiff's entries subject to a fourth administrative review ("AR 4") of the Softwood Lumber from Canada Order.  *See* Certain Softwood Lumber Products from Canada: Request for Administrative Review for J.D. Irving, Limited, Pub. Doc. No. 4207148-01 (A-122-857) (Jan. 31, 2022).  Commerce initiated AR 4 — which covers entries of subject merchandise made between January 1, 2021, and December 31, 2021 — on March 9, 2022.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews* ("AR 4 Initiation Notice"), 87 Fed. Reg. 13,252, 13,252-54 (Dep't of Commerce Mar. 9, 2022) (initiation notice).  Based on the publication date of Commerce's notice of initiation, plaintiff has a deadline of June 7, 2022, to withdraw its request for an AR 4.  *See* 19 C.F.R. § 351.213(d)(1) ("[Commerce] will rescind an administrative review . . . if a party that requested a review withdraws the request *within 90 days* of the date of publication of notice of initiation of the requested review." (emphasis supplied)).

In this action, plaintiff contests the instructions that Commerce issued to Customs on December 9, 2021, to collect cash deposits on plaintiff's entries at the 11.59% rate assigned in the AR 2 Final Results.  *See* Compl. at 1; Commerce's Cash Deposit Instructions.  Plaintiff contends that "Commerce acted arbitrarily and in a manner inconsistent with Congress'[] intent when it replaced" the 1.57% cash deposit rate assigned to plaintiff following its decision not to request an AR 3, with the 11.59% rate assigned to plaintiff in connection with the earlier AR 2.  Compl. at 15.  According to plaintiff, Commerce's instructions to replace the 1.57% rate with the 11.59% rate "calculated for an *earlier* period . . . inject[] uncertainty into the review-request process" and violate 19 U.S.C. § 1675(a) as well as Commerce's regulations.  *Id.* at 11-12.

Accordingly, plaintiff requests that the court: (1) declare that Commerce's Cash Deposit

Instructions with respect to plaintiff's entries made on or after December 2, 2021, are

unlawful; and (2) order Commerce to instruct Customs to reinstate the 1.57% cash

deposit rate and to refund any excess cash deposits provided for entries made on or

after December 2, 2021.  *See id.* at 17.

      Plaintiff filed its complaint on December 30, 2021.  *Id.*  On March 4, 2022,

defendants filed a motion to dismiss the complaint, contending that: (1) the court does

not possess subject matter jurisdiction to hear plaintiff's action; (2) plaintiff does not

have standing to bring its claim; and (3) plaintiff fails to state a claim upon which relief

can be granted pursuant to USCIT Rule 12(b)(6).  Def.'s Mot. to Dismiss ("Def. Mot. to

Dismiss") at 1-2, 14, ECF No. 16.  In response, plaintiff argues that: (1) the court has

subject matter jurisdiction to hear plaintiff's action pursuant to 28 U.S.C. § 1581(i);[3] (2)

---

[3] Plaintiff states that "[n]ormally, the court would have jurisdiction to review [plaintiff's] claim — and to grant the relief [plaintiff] seeks — under 28 U.S.C. § 1581(c)."  Compl. at 2.  However, on December 28, 2021, other interested parties requested binational panel review of the AR 2 Final Results pursuant to Article 10.12 of the United States–Mexico–Canada Agreement ("USMCA"), thereby providing a USMCA panel with "exclusive review" of the AR 2 Final Results pursuant to 19 U.S.C. § 1516a(g)(2)(B).  *Id.* at 3.  Plaintiff argues, however, that USMCA panels do not possess equitable powers and that such a panel is not capable of providing plaintiff with the relief that it seeks in the instant action with respect to Commerce's Cash Deposit Instructions.  *See id.* at 3-4.  Accordingly, plaintiff contends that the court has jurisdiction to hear the instant action pursuant to 28 U.S.C. § 1581(i), as any relief that a USMCA panel might provide to plaintiff pursuant to Article 10.12 of the USMCA would be "manifestly inadequate."  *Id.* at 4-5 (quoting *Intercontinental Chems., LLC v. United States*, 44 CIT __, __, 483 F. Supp. 3d 1232, 1238 (2020)); *see* United States–Mexico–Canada Agreement, art. 10.12 ¶¶ 2, 8, 9, July 1, 2020, OFF. OF THE U.S. TRADE REP., https://ustr.gov/trade-agreements/free-trade-agreements/united-states-mexico-canada-agreement/agreement-between; Annex II, Rules of Procedure for Article 10.12 (Binational Panel Reviews), R. 76 ¶ 1, OFF. OF THE U.S. TRADE REP., https://ustr.gov/sites/default/files/files/agreements/usmca/AnnexIIRulesProcedureUSMCABinationalPanels.pdf (last visited Apr. 27, 2022).

plaintiff has standing to bring its claim; and (3) plaintiff states a claim upon which relief

can be granted.  Pl.'s Resp. Opp'n to Def.'s Mot. to Dismiss at 1-2, 9, ECF No. 17.

## STANDARD OF REVIEW

USCIT Rule 3(g)(5) permits the Court to expedite any "action that the court

determines, based on motion and for good cause shown, warrants expedited

treatment."  The Court has concluded that "good cause" exists to expedite the briefing

and consideration of an action:

> [1] in a case in which failure to expedite would result in mootness or deprive
> the relief requested of much of its value, [2] in a case in which failure to
> expedite would result in extraordinary hardship to a litigant, or [3] actions
> where the public interest in enforcement of the statute is particularly strong.

*Ontario Forest Indus. Ass'n v. United States*, 30 CIT 1117, 1127, 444 F. Supp. 2d 1309,

1319 (2006) (citing H.R. REP. NO. 98-985, at 6 (1984), *as reprinted in* 1984

U.S.C.C.A.N. 5779, 5784); *see also Husqvarna Constr. Prods. N. Am. v. United States*,

Ct. No. 12-00205, Order (Aug. 9, 2012) ("*Husqvarna*") at 4, ECF No. 19.

## DISCUSSION

### 1.    Positions of the parties

Plaintiff contends that "good cause" exists to expedite the briefing and

consideration of this action.  Pl. Br. at 1; USCIT R. 3(g)(5).  Plaintiff maintains that the

failure to expedite the briefing and consideration of this action would "deprive the relief

requested of much of its value."  Pl. Br. at 2 (citing *Ontario Forest*, 30 CIT at 1127, 444

F. Supp. 2d at 1319).  As discussed, plaintiff has until June 7, 2022, to withdraw its

request for an AR 4.  *See* AR 4 Initiation Notice, 87 Fed. Reg. 13,252; 19 C.F.R. §

351.213(d)(1).  Plaintiff contends that "to receive the full value of the relief that it seeks,

it is imperative" that the court rule on the substantive merits of this action prior to this

deadline so that plaintiff may make an "informed decision" on whether to withdraw its request for an AR 4.  Pl. Br. at 3.  Plaintiff is of the view that the expedited briefing and consideration of this case is warranted so that plaintiff will know whether "the AD cash deposit rate going forward will be 1.57% or 11.59%" and can determine whether to participate in AR 4 based on the applicable rate.  *Id.*

Plaintiff argues also that the "public interest" in the proper administration of 19 U.S.C. § 1675(a) and Commerce's implementing regulations is "particularly strong."  *Id.* at 3-6 (citing *Ontario Forest*, 30 CIT at 1127, 444 F. Supp. 2d at 1319).  Plaintiff states that in 1984, Congress revised 19 U.S.C. § 1675(a), the statute regulating the AR and cash deposit process, to require that Commerce conduct an AR only "if a request for such a review has been received."  *Id.* at 4 (quoting 19 U.S.C. § 1675(a)(1)); *see Antidumping and Countervailing Duties; Administrative Reviews on Request; Transition Provisions* ("AR Transition Provisions"), 50 Fed. Reg. 32,556, 32,556 (Dep't of Commerce Aug. 13, 1985).  According to plaintiff, Congress intended for this revision to 19 U.S.C. § 1675(a) "to create *certainty* for U.S. producers, exporters, and importers alike, so they would not need to request reviews when satisfied with the current AD cash deposit rates in place."  Pl. Br. at 5 (emphasis in original).  Plaintiff contends that Commerce's Cash Deposit Instructions, which replace the cash deposit rate assigned to plaintiff with a rate calculated for an earlier AR, promote uncertainty and consequently are "contrary to Congress'[] express purpose for amending 19 U.S.C. § 1675(a)."  *Id.* at 4-5.  Accordingly, plaintiff argues that "the correct disposition of the legal issue" that plaintiff raises would serve the public interest by "benefit[ing] Commerce and the

thousands of domestic producers, importers, and foreign producers/exporters participating in AD proceedings." *Id.* at 3-4.

Last, plaintiff argues that this action is "well-suited for expedited treatment" because plaintiff raises only one legal issue: "whether, in accordance with Congress'[] intent, an AD cash deposit rate established by operation of 19 C.F.R. § 351.212(c)(1) must remain in place until changed in an administrative review for a subsequent period." *Id.* at 6-8.[4]

In response, defendants argue that plaintiff's action relates solely to plaintiff's obligation to pay cash deposits at a particular rate, which "is no more than the same business decision that every importer must make when deciding whether to seek review of a POR before results of a prior review are released." Def.'s Resp. to Pl.'s Mot. to Expedite ("Def. Resp. Br.") at 2-3, ECF No. 11; *see* Def. Mot. to Dismiss at 3. Defendants assert that this obligation does not satisfy the Court's "good cause" requirement for the expedited briefing and consideration of an action. *See* Def. Resp. Br. at 2-3; USCIT R. 3(g)(5).

As to the public interest, defendants argue that plaintiff fails to provide a reason that "the usual statutory and regulatory provisions that have long governed the annual review/cash deposit process should not govern here." Def. Resp. Br. at 3; *see* Teleconference, ECF No. 13 at 22:36-23:09, 1:21:08-1:21:34. Defendants contend that

---

[4] Plaintiff does not contend that a decision by the court not to expedite the briefing "would result in mootness" under the first *Ontario Forest* circumstance, nor does plaintiff argue that the second *Ontario Forest* circumstance — that "failure to expedite would result in extraordinary hardship to a litigant" — applies with respect to this action. *Ontario Forest*, 30 CIT at 1127, 444 F. Supp. 2d at 1319; Teleconference, ECF No. 13 at 10:10-11:02.

Commerce's Cash Deposit Instructions follow what has been Commerce's consistent

practice with respect to the assignment of cash deposit rates since Congress revised 19

U.S.C. § 1675(a).  *See* Teleconference, ECF No. 13 at 34:51-35:14, 45:28-45:58.

Last, in contrast to plaintiff's contention that this action is "well-suited for

expedited treatment" because the action involves only one legal issue, Pl. Br. at 6-8,

defendants raise several legal issues with respect to whether the court possesses

subject matter jurisdiction to hear this action, whether plaintiff has standing to bring its

claim and whether plaintiff states a claim upon which relief can be granted.  *See* Def.

Mot. to Dismiss at 1-2, 4-5.

2.    **Analysis**

Plaintiff does not establish that "good cause" exists to expedite the briefing and

consideration of this action.[5]  *Ontario Forest*, 30 CIT at 1127, 444 F. Supp. 2d at 1319.

To start, the court's decision not to expedite the briefing and consideration of this

action would not "deprive the relief requested of much of its value."  *Id.*  As discussed,

plaintiff requests that the court: (1) declare that Commerce's Cash Deposit Instructions

with respect to plaintiff's entries made on or after December 2, 2021, are unlawful; and

(2) order Commerce to instruct Customs to reinstate the 1.57% cash deposit rate and to

refund any excess cash deposits provided for entries made on or after December 2,

2021.  *See* Compl. at 17.

With respect to plaintiff's request for declaratory relief, should the court rule in

plaintiff's favor on the substantive merits of this action subsequent to plaintiff's deadline

---

[5] As discussed in note 4, *supra*, plaintiff does not raise an argument with respect to the
circumstance set forth in *Ontario Forest* concerning "extraordinary hardship."  *See*
*Ontario Forest*, 30 CIT at 1127, 444 F. Supp. 2d at 1319.

to withdraw its request for an AR 4 on June 7, 2022, that ruling would have the same

effect on the "rights and other legal relations" between the parties as if the court had

issued such a declaration prior to June 7, 2022.  28 U.S.C. § 2201(a); *see* 28 U.S.C. §

2643(c)(1) ("[T]he Court of International Trade may . . . order any . . . form of relief that

is appropriate in a civil action, including, but not limited to, declaratory judgments.").

   Plaintiff's second request is that the court order Commerce to instruct Customs to

reinstate the 1.57% cash deposit rate and to refund any excess cash deposits provided

for entries made on or after December 2, 2021.  *See* Compl. at 17.  The Court

previously has concluded that a party's requested relief is not deprived of much of its

value if the party will, upon a decision in its favor on the substantive merits, receive a

"refund plus interest of any excess [cash] deposits."  *Husqvarna*, Ct. No. 12-00205, at 4-

5.  In the instant action, should the court rule in plaintiff's favor subsequent to the

deadline of June 7, 2022, plaintiff still will be entitled to the full relief that it requests —

the reinstatement of the 1.59% cash deposit rate as well as a refund, plus interest, of

any excess cash deposits provided for entries made on or after December 2, 2021.  For

this reason, plaintiff's second request would not be deprived "of much of its value"

should the court decide not to expedite the briefing and consideration of this action.

*Ontario Forest*, 30 CIT at 1127, 444 F. Supp. 2d at 1319.

   Further, plaintiff argues that its inability to make an "informed decision" on

whether to withdraw plaintiff's request for an AR 4 would deprive plaintiff's requested

relief of much of its value.  Pl. Br. at 3.  This argument is not persuasive, as plaintiff's

uncertainty in this respect is a "problem many (if not all) litigants face before the Court."

*Ontario Forest*, 30 CIT at 1128, 444 F. Supp. 2d at 1320.  In fact, this uncertainty is

inherent in the "retrospective" duty assessment system that the United States employs

with respect to the collection of antidumping and countervailing duties.  19 C.F.R. §

351.212(a).  Plaintiff does not articulate how this uncertainty would deprive either form

of relief that plaintiff requests "of much of its value."  *Ontario Forest*, 30 CIT at 1127, 444

F. Supp. 2d at 1319.  Accordingly, "good cause" does not exist to expedite the briefing

and consideration of plaintiff's action.  USCIT R. 3(g)(5).

     The court next considers whether the public interest involved in plaintiff's action

is "particularly strong" and warrants the expedited briefing and consideration of this

action.  *Ontario Forest*, 30 CIT at 1127, 444 F. Supp. 2d at 1319.

     Plaintiff contends that Commerce's Cash Deposit Instructions in this case

promote uncertainty and consequently are "contrary to Congress'[] express purpose for

amending 19 U.S.C. § 1675(a)" in 1984.  Pl. Br. at 4-5.  Plaintiff argues that the public

interest in this action is "particularly strong" because the "correct disposition of the legal

issue" that plaintiff raises would "benefit[] not only the thousands of parties in AD

proceedings — petitioners, importers, and respondents alike — but also Commerce."

*Id.* at 3, 6.  In response, defendants argue that 19 U.S.C. § 1675(a) and Commerce's

implementing regulations, which Commerce applied in this case, have "governed the

annual review/cash deposit process" for nearly four decades.  Def. Resp. Br. at 3; *see*

Teleconference, ECF No. 13 at 1:21:08-1:21:34.  Defendants assert that plaintiff does

not explain why those provisions "should not govern here, such that an expedited

proceeding is warranted."  Def. Resp. Br. at 3.

     In determining whether the public interest involved in an action is "particularly

strong," the Court has examined whether the moving party demonstrates "any exigent

circumstance" that distinguishes the party's case "from those of any other respondents in antidumping cases where the public policy [has] generally been held to be that they receive accurate rates." *Husqvarna*, Ct. No. 12-00205, at 4-5 (citing *Lasko Metal Prods. v. United States*, 43 F.3d 1442, 1443 (Fed. Cir. 1994)).

Plaintiff does not point to such an "exigent circumstance" in this action. *Id.* Plaintiff contends that "thousands of parties in AD proceedings" — as well as Commerce — would benefit from the "correct disposition of the legal issue" that plaintiff raises with respect to 19 U.S.C. § 1675(a) and Commerce's implementing regulations. Pl. Br. at 3, 6. This contention, however, does not demonstrate any "exigen[cy]" with respect to plaintiff's action and does not "distinguish[]" this action from other cases in which parties have asserted that their respective interpretations of the applicable statutes and regulations would serve "the public policy . . . that [the parties] receive accurate rates." *Husqvarna*, Ct. No. 12-00205, at 5 (citing *Lasko Metal*, 43 F.3d at 1443). Rather, plaintiff's action contests Commerce's established practice with respect to the assignment of cash deposit rates pursuant to 19 U.S.C. § 1675(a) and Commerce's implementing regulations.[6]  *See* AR Transition Provisions, 50 Fed. Reg. at

---

[6] For example, Commerce published an AD order on carbon and certain alloy steel wire rod from Canada on October 29, 2002. *Notice of Amended Final Determination of Sales at Less than Fair Value and Antidumping Duty Order: Carbon and Certain Alloy Steel Wire Rod from Canada*, 67 Fed. Reg. 65,944 (Dep't of Commerce Oct. 29, 2002) (antidumping duty order). One of the respondents covered by this order, Mittal Canada Inc. ("Mittal Canada") (formerly known as Ispat Sidbec, Inc. or ISI), participated in an AR 2 of the order, but did not participate in an AR 3. *See Notice of Final Results of Antidumping Duty Administrative Review: Carbon and Certain Alloy Steel Wire Rod from Canada* ("Mittal AR 2 Final Results"), 71 Fed. Reg. 3,822, 3,822 (Dep't of Commerce Jan. 24, 2006) (final results); *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 69 Fed. Reg. 67,701, 67,702 (Dep't of Commerce Nov. (footnote continued)

32,556-57, 32,560.  Accordingly, plaintiff's action does not involve a "particularly strong" public interest that warrants the expedited briefing and consideration that plaintiff requests.  *Ontario Forest*, 30 CIT at 1127, 444 F. Supp. 2d at 1319.

Last, "good cause" does not exist to expedite this action on the basis of plaintiff's contention that the action involves only one legal issue.  *See* Pl. Br. at 6-8; USCIT R. 3(g)(5).  To start, this contention does not constitute one of the circumstances set forth by the Court in *Ontario Forest* that warrants the expedited briefing and consideration of an action.  *See Ontario Forest*, 30 CIT at 1127, 444 F. Supp. 2d at 1319.  Further, and in contrast to plaintiff's contention, defendants raise three legal issues in their motion to dismiss: (1) the court does not possess subject matter jurisdiction to hear plaintiff's action pursuant to USCIT Rule 12(b)(1); (2) plaintiff does not have standing to bring its claim; and (3) plaintiff fails to state a claim upon which relief can be granted pursuant to USCIT Rule 12(b)(6).  Def. Mot. to Dismiss at 1-2, 4-5.  Were the court to grant expedited briefing and consideration of this action, the court would consider these

---

19, 2004) (initiation notice); *Notice of Final Results of Antidumping Duty Administrative Review: Carbon and Certain Alloy Steel Wire Rod from Canada*, 72 Fed. Reg. 26,591, 26,591 (Dep't of Commerce May 10, 2007) (final results); *Initiation of Antidumping and Countervailing Duty Administrative Reviews and Deferral of Administrative Reviews*, 70 Fed. Reg. 72,107, 72,108 (Dep't of Commerce Dec. 1, 2005) (initiation notice).

As in the instant action, Commerce published the final results of its AR 2 subsequent to Mittal Canada's decision not to request an AR 3.  *See* Mittal AR 2 Final Results, 71 Fed. Reg. at 3,822; 19 C.F.R. § 351.213(b).  Further, Commerce replaced the cash deposit rate in effect at the point Mittal Canada decided not to request an AR 3 with the rate determined in the AR 2 final results.  *See* Cash Deposit Instructions for Carbon and Certain Alloy Steel Wire Rod from Canada, Message No. 6026204 (A-122-840) (Jan. 26, 2006); Liquidation Instructions for Carbon and Certain Alloy Steel Wire Rod from Canada, Message No. 5349202 (A-122-840) (Dec. 15, 2005); Cash Deposit Instructions for Carbon and Certain Alloy Steel Wire Rod from Canada, Message No. 4338206 (A-122-840) (Dec. 3, 2004).

issues.  The need to consider multiple legal issues undermines plaintiff's assertion that this action is "well-suited for expedited treatment."  Pl. Br. at 8; *see also Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of the Treasury*, 2019 WL 4094563, at *1-3 (D.D.C. Aug. 29, 2019) (denying the plaintiff's motion to expedite in view of the "jurisdictional questions" and other "threshold matters" that the defendants likely would raise in a motion to dismiss).

## CONCLUSION

In the singular *The Wizard of Oz*, Dorothy (portrayed by the incomparable Judy Garland), having arrived in Munchkinland, and with the Munchkins arrayed all around her, and having witnessed the abrupt arrivals and departures in poofs of smoke and floating bubbles, respectively, of Evillene (a.k.a. the Wicked Witch of the West) and Glinda (a.k.a. the Good Witch of the North), comments: "My!  People come and go so quickly here!"[7]

* * *

For the foregoing reasons, plaintiff does not establish that "good cause" exists to expedite the briefing and consideration of this action.  USCIT R. 3(g)(5).  Accordingly, the court denies plaintiff's motion.

**SO ORDERED.**

/s/      Timothy M. Reif
Judge

Dated: May 2, 2022
        New York, New York

---

[7] THE WIZARD OF OZ (Metro-Goldwyn-Mayer 1939); L. FRANK BAUM, THE WONDERFUL WIZARD OF OZ (1900).