Slip Op. 23-10

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **J.D. IRVING, LIMITED,** | |
| Plaintiff, | |
| v. | **Before: Timothy M. Reif, Judge** |
| **UNITED STATES AND U.S. DEPARTMENT OF COMMERCE,** | **Court No. 21-00641** |
| Defendants. | |

## <u>OPINION</u>

[Granting defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to U.S. Court of International Trade Rule 12(b)(1).]

Dated: January 25, 2023

<u>Jay C. Campbell</u>, White and Case LLP, of Washington, D.C., argued for plaintiff J.D. Irving, Limited.  With him on the brief were <u>Walter J. Spak</u> and <u>Cristina M. Cornejo</u>.

<u>Kelly A. Krystyniak</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendants United States and the U.S. Department of Commerce.  With her on the briefs were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Claudia Burke</u>, Assistant Director.  Of counsel on the briefs was <u>Paul K. Keith</u>, Senior Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

\* \* \*

Reif, Judge: J.D. Irving, Limited ("plaintiff" or "J.D. Irving") brings the instant action to "contest[] the antidumping duty ("AD") cash deposit instructions issued by the U.S. Department of Commerce ("Commerce") to U.S. Customs and Border Protection [("Customs")] following publication of the final results of the 2019 administrative review of the AD duty order on certain softwood lumber products from Canada."  Compl. ¶ 1,

ECF No. 4; *see* Cash Deposit Instructions for Certain Softwood Lumber from Canada,

Message No. 1343410 (A-122-857) (Dec. 9, 2021) (Compl. Attach. 1) ("Commerce's

Cash Deposit Instructions"); *Certain Softwood Lumber Products from Canada:*

*Antidumping Duty Order and Partial Amended Final Determination* ("*Softwood Lumber*

*Order*"), 83 Fed. Reg. 350 (Dep't of Commerce Jan. 3, 2018).  The United States and

Commerce (collectively, "defendants") move to dismiss the instant action pursuant to

Rules 12(b)(1) and 12(b)(6) of the U.S. Court of International Trade ("USCIT" or the

"Court").  *See* Def.'s Mot. to Dismiss ("Defs. Br."), ECF No. 16; Def.'s Reply in Support

of Its Mot. to Dismiss ("Defs. Reply Br."), ECF No. 18; *see also* Pl.'s Resp. in Opp'n to

Def.'s Mot. to Dismiss ("Pl. Br."), ECF No. 17.  For the reasons discussed below, the

court grants defendants' motion to dismiss for lack of subject matter jurisdiction

pursuant to USCIT Rule 12(b)(1).

## BACKGROUND

J.D. Irving is a Canadian producer and exporter of merchandise subject to the

Softwood Lumber Order, as well as the importer of record of that merchandise.  Compl.

¶ 8.  Commerce published the Softwood Lumber Order on January 3, 2018.  *See*

*Softwood Lumber Order*, 83 Fed. Reg. 350.

On April 1, 2019, Commerce initiated a first administrative review ("AR 1") of the

Softwood Lumber Order.  *Certain Softwood Lumber Products from Canada: Initiation of*

*Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 12,209,

12,209-10 (Dep't of Commerce Apr. 1, 2019) (initiation notice).  AR 1 covered entries of

subject merchandise made between June 30, 2017, and December 31, 2018.  *Certain*

*Softwood Lumber Products from Canada: Final Results of Antidumping Duty*

*Administrative Review; 2017-2018* ("*AR 1 Final Results*"), 85 Fed. Reg. 76,519, 76,519-20 (Dep't of Commerce Nov. 30, 2020).  J.D. Irving was not selected as a mandatory respondent in this review.  Accordingly, upon the publication of the AR 1 Final Results on November 30, 2020, Commerce assigned to J.D. Irving the non-selected companies' assessment rate of 1.57%.  *See id.* at 76,520-21.  Pursuant to section 751(a)(2)(C) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(a)(2)(C) (2018),[1] Commerce instructed Customs to collect at this 1.57% rate cash deposits on J.D. Irving's entries made on or after the publication date of the AR 1 Final Results.  *See id.* at 76,520.

On March 10, 2020, Commerce initiated a second administrative review ("AR 2") of the Softwood Lumber Order.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 13,860, 13,862 (Dep't of Commerce Mar. 10, 2020) (initiation notice).  AR 2 covered entries made between January 1, 2019, and December 31, 2019.  *Certain Softwood Lumber Products from Canada: Final Results of Antidumping Duty Administrative Review; 2019* ("*AR 2 Final Results*"), 86 Fed. Reg. 68,471, 68,471-73 (Dep't of Commerce Dec. 2, 2021).  J.D. Irving was not selected as a mandatory respondent in this review.  Upon the publication of the AR 2 Final Results on December 2, 2021, Commerce assigned to J.D. Irving the non-selected companies' assessment rate of 11.59%.  *See id.* at 68,472-73.  Commerce instructed Customs to collect at this 11.59% rate cash deposits on J.D. Irving's entries made on or after December 2, 2021, the publication date of the AR 2 Final Results.  *See id.* at 68,473; Commerce's Cash Deposit Instructions.

---

[1] References to the U.S. Code are to the 2018 edition.  Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code.

Following Commerce's initiation of an AR 2 on March 10, 2020, and *prior* to

Commerce's publication of the AR 2 Final Results on December 2, 2021, Commerce

initiated a third administrative review ("AR 3") of the Softwood Lumber Order.  *Initiation*

*of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 12,599,

12,601 (Dep't of Commerce Mar. 4, 2021) (initiation notice).  On March 4, 2021,

Commerce initiated an AR 3, which covered entries made between January 1, 2020,

and December 31, 2020.  *Id.*

In contrast with AR 1 and AR 2, no party requested that Commerce review J.D.

Irving's entries that would have been subject to an AR 3.  *See id.* at 12,603; Compl. ¶

17.  Accordingly, Commerce instructed Customs to liquidate J.D. Irving's entries that

would have been subject to an AR 3 at the 1.57% rate then in effect, which had been

assigned to J.D. Irving in the AR 1 Final Results.  *See* Automatic Liquidation

Instructions for Certain Softwood Lumber Products for the Period 01/01/2020 Through

12/31/2020, Message No. 1106404 (A-122-857) (Apr. 16, 2021) (Compl. Attach. 7)

("Automatic Liquidation Instructions"); *AR 1 Final Results*, 85 Fed. Reg. at 76,520; 19

C.F.R. § 351.212(c)(1)(i).  In addition, Commerce instructed Customs to continue to

collect cash deposits on J.D. Irving's entries at this 1.57% rate.  *See* 19 C.F.R. §

351.212(c)(1)(ii) ("If [Commerce] does not receive a timely request for an administrative

review . . . [Commerce] . . . will instruct [Customs] to . . . continue to collect the cash

deposits previously ordered."); Automatic Liquidation Instructions; Cash Deposit

Instructions for Certain Softwood Lumber Product from Canada, Message No. 0343402

(A-122-857) (Dec. 8, 2020).

On January 31, 2022, J.D. Irving requested that Commerce review J.D. Irving's entries subject to a fourth administrative review ("AR 4") of the Softwood Lumber Order. *See* Letter from White & Case LLP, to Sec'y of Commerce re: Certain Softwood Lumber Products from Canada: Request for Administrative Review for J.D. Irving, Limited, Pub. Doc. No. 4207148-01 (A-122-857) (Jan. 31, 2022).  On March 9, 2022, Commerce initiated an AR 4, which covers entries made between January 1, 2021, and December 31, 2021.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 13,252, 13,252-54 (Dep't of Commerce Mar. 9, 2022) (initiation notice).

Plaintiff alleges in the instant action that "Commerce acted arbitrarily and in a manner inconsistent with Congress'[] intent when it replaced" the 1.57% cash deposit rate assigned to J.D. Irving following its decision not to request an AR 3, with the 11.59% rate assigned to J.D. Irving in connection with the earlier AR 2.  Compl. ¶ 27. According to plaintiff, Commerce's decision to replace the 1.57% rate with the 11.59% rate "calculated for an *earlier* period . . . injects uncertainty into the review-request process" and contravenes 19 U.S.C. § 1675 as well as Commerce's regulations.  *Id.* ¶ 19 (emphasis in original).

Plaintiff filed its complaint on December 30, 2021, asserting that the court has subject matter jurisdiction under 28 U.S.C. § 1581(i) to hear the instant action.  *Id.* ¶ 2. In its complaint, plaintiff alleges that "[n]ormally, the court would have jurisdiction to review [plaintiff's] claim — and to grant the relief [that plaintiff] seeks — under 28 U.S.C. § 1581(c)."  *Id.* ¶ 4.  However, on December 28, 2021 — two days prior to plaintiff's filing of the complaint — other interested parties requested binational panel review of the AR 2 Final Results pursuant to Article 10.12 of the United States–Mexico–Canada

Agreement ("USMCA"),[2] thereby providing a binational panel with "exclusive review" of

the AR 2 Final Results pursuant to 19 U.S.C. § 1516a(g)(2).  *Id.* ¶ 5; *see* Letter from

McDermott Will & Emery LLP et al., to USMCA Secretariat, U.S. Sec'y, re: Request for

Panel Review of Second Affirmative Antidumping Duty Administrative Review of Certain

Softwood Lumber Products from Canada (Dec. 28, 2021) (Compl. Attach. 5) ("Request

for Panel Review").

On March 4, 2022, defendants moved to dismiss the instant action, to which

plaintiff responded in opposition on March 14, 2022.  *See generally* Defs. Br.; Pl. Br.;

Defs. Reply Br.  On May 2, 2022, the court denied plaintiff's motion to expedite the

briefing and consideration of the instant action.  *J.D. Irving, Ltd. v. United States*, 46 CIT

__, 570 F. Supp. 3d 1349 (2022).

## LEGAL FRAMEWORK

### I.    Binational panel review under the United States–Mexico–Canada Agreement

On July 1, 2020, the USMCA entered into force, superseding the North American

Free Trade Agreement ("NAFTA").  *See supra* note 2; United States–Mexico–Canada

Agreement Implementation Act, Pub. L. No. 116-113, 134 Stat. 11 (2020).  Article 10.12

of the USMCA, "like NAFTA Article 1904, provides a dispute settlement mechanism for

purposes of reviewing antidumping and countervailing duty determinations issued by

---

[2] United States–Mexico–Canada Agreement, art. 10.12 ¶¶ 2, 8, 9, July 1, 2020, OFF. OF
THE U.S. TRADE REP., https://ustr.gov/trade-agreements/free-trade-agreements/united-
states-mexico-canada-agreement/agreement-between; Annex II, Rules of Procedure for
Article 10.12 (Binational Panel Reviews) ("*Art. 10.12 Rules of Procedure*"), R. 76 ¶ 1,
OFF. OF THE U.S. TRADE REP.,
https://ustr.gov/sites/default/files/files/agreements/usmca/AnnexIIRulesProcedureUSMC
ABinationalPanels.pdf (last visited Jan. 20, 2022).

the United States, Canada, and Mexico."  *Procedures and Rules for Article 10.12 of the United States–Mexico–Canada Agreement* ("*USMCA Procedures and Rules*"), 86 Fed. Reg. 70,045, 70,045 (Dep't of Commerce Dec. 9, 2021).  The procedures and rules set forth in Article 10.12 of the USMCA are "virtually unchanged" from those in Article 1904 of the NAFTA.  *Id.*

Article 10.12 of the USMCA provides that a binational panel "may uphold a final determination" by Commerce "or remand [the determination] for action not inconsistent with the panel's decision."  USMCA, art. 10.12 ¶ 8.  In addition, "[t]he decision of a panel . . . shall be binding on the involved Parties with respect to the particular matter . . . that is before the panel."  *Id.* ¶ 9.  Further, and pursuant to Article 10.12 ¶ 14 of the USMCA, the USMCA Free Trade Commission has adopted Rules of Procedure that are "applicable to all binational panel reviews under the USMCA."  *USMCA Procedures and Rules*, 86 Fed. Reg. at 70,045; *see* USMCA, art. 10.12 ¶ 14.  Rule 12 provides that "panel review shall be limited to . . . the allegations of error of fact or law . . . that are set out in the Complaints filed in the panel review . . . ."  *Art. 10.12 Rules of Procedure*, R. 12(a).  Rule 77 provides that subsequent to a panel decision that remands to Commerce a challenged determination, Commerce shall "give notice of the action taken pursuant to a remand of the panel by filing . . . a Determination on Remand within the time specified by the panel."  *Id.* R. 77 ¶ 1.

19 U.S.C. § 1516a(g) codifies into U.S. law the binational panel review process set forth in Article 10.12 of the USMCA.  19 U.S.C. § 1516a(g)(2) provides:

(2) EXCLUSIVE REVIEW OF DETERMINATION BY BINATIONAL PANELS.  If binational panel review of a determination is requested pursuant to . . . article 10.12 of the USMCA, then . . . —

> (A) the determination is not reviewable under [19 U.S.C. § 1516a(a)], and
>
> (B) no court of the United States has power or jurisdiction to review the determination on any question of law or fact by an action in the nature of mandamus or otherwise.

19 U.S.C. § 1516a(g)(2)(A)-(B).  "[T]he binational panel process replaces the forum — not the remedies — available to the parties."  *Bldg. Sys. de Mexico, S.A. de C.V. v. United States*, 44 CIT __, __, 476 F. Supp. 3d 1401, 1410 (2020); *see* S. Rep. No. 100-509, at 31 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 2395, 2426 ("Because binational panels act as a substitute for U.S. courts in deciding whether a determination is consistent with U.S. law, the Committee intends binational panel decisions to be implemented in the same manner that court decisions are implemented under current law.").

Several exceptions to the exclusive review of a determination by a binational panel are set forth in 19 U.S.C. § 1516a(g)(3) and (4).[3]  Further, the statute defines

------------

[3] 19 U.S.C. § 1516a(g)(3) provides:

(3) EXCEPTION TO EXCLUSIVE BINATIONAL PANEL REVIEW

> (A) In general.  A determination is reviewable under [19 U.S.C. § 1516a(a)] if the determination sought to be reviewed is —
>
> > (i) a determination as to which neither the United States nor the relevant FTA country requested review by a binational panel pursuant to . . . article 10.12 of the USMCA;
> >
> > (ii) a revised determination issued as a direct result of judicial review, commenced pursuant to [19 U.S.C. § 1516a(a)], if neither the United States nor the relevant FTA country requested review of the original determination;

(footnote continued)

"determination" with reference to the "[r]eviewable determinations" enumerated in 19

U.S.C. § 1516a(a)(2)(B), as including "a final determination . . . by [Commerce] . . .

under section 1675" of Title 19 of the U.S. Code — *i.e.*, Commerce's final results with

respect to the administrative review of an AD or CVD order.  19 U.S.C. §

1516a(a)(2)(B)(iii); 19 U.S.C. § 1675; *cf. Shinyei Corp. of Am. v. United States*, 355

F.3d 1297, 1304, 1309-10 (Fed. Cir. 2004) (stating that reviewable determinations

under 19 U.S.C. § 1516a(a)(2)(B) include Commerce's "final results" of an

administrative review).

## II.     Subject matter jurisdiction of the Court under 28 U.S.C. § 1581(i)

Whether a court has subject matter jurisdiction to hear an action is a "threshold"

inquiry.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  28 U.S.C. §

1581(i) is the Court's "residual" jurisdictional provision, *Fujitsu Gen. Am., Inc. v. United*

*States*, 283 F.3d 1364, 1371 (Fed. Cir. 2002) (citing *Conoco, Inc. v. United States*

*Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1584 n.4 (Fed. Cir. 1994)), which allows the

---

(iii) a determination issued as a direct result of judicial review that was commenced pursuant to [19 U.S.C. § 1516a(a)] prior to the entry into force of the . . . USMCA;

(iv) a determination which a binational panel has determined is not reviewable by the binational panel;

(v) a determination as to which binational panel review has terminated pursuant to article 10.13 of the USMCA; or

(vi) a determination as to which extraordinary challenge committee review has terminated pursuant to article 10.13 of the USMCA.

19 U.S.C. § 1516a(g)(A)(i)-(vi).  Further, 19 U.S.C. § 1516a(g)(4) provides for certain exceptions with respect to actions that raise constitutional issues.  *See Mitsubishi Elecs. Indus. Canada, Inc. v. Brown*, 20 CIT 313, 316, 917 F. Supp. 836, 838 (1996).  There is no indication — nor do the parties assert — that any of the foregoing exceptions apply with respect to the instant action.

Court to "take jurisdiction over designated causes of action founded on other provisions

of law." *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992)

(citation omitted).  The Court previously has stated that 28 U.S.C. § 1581(i) constitutes

"a Congressional fail-safe device" and that "[i]f the circumstances of a case are

sufficiently unusual so that one may presume that Congress could not have provided for

such a case under the general language of 19 U.S.C. § 1516a . . . 28 U.S.C. § 1581(i) is

available to afford a means of vindication of statutory rights." *Hylsa, S.A. de C.V. v.*

*United States*, 21 CIT 222, 227-28, 960 F. Supp. 320, 324 (1997), *aff'd sub nom. Hylsa,*

*S.A. v. Tuberia Nat., S.A.*, 135 F.3d 778 (Fed. Cir. 1998).  However, the "scope" of 28

U.S.C. § 1581(i) is "strictly limited," *Norcal/Crosetti*, 963 F.2d at 359, and jurisdiction

under this provision "may not be invoked when jurisdiction under another [sub]section of

§ 1581 *is or could have been available*, unless the relief provided under that other

subsection would be manifestly inadequate." *Consol. Bearings Co. v. United States*, 25

CIT 546, 549, 166 F. Supp. 2d 580, 583 (2001) (emphasis in original) (quoting *Ad Hoc*

*Comm. of Fla. Producers of Gray Portland Cement v. United States*, 22 CIT 902, 906,

25 F. Supp. 2d 352, 357 (1998)) (internal quotation marks omitted).

      To determine whether jurisdiction "is or could have been available" under another

subsection of 28 U.S.C. § 1581, the Court is required to "look to the true nature of the

action." *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1292-93 (Fed. Cir.

2008); *cf. Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir.

2006) ("[A] party may not expand a court's jurisdiction by creative pleading."); *Sunpreme*

*Inc. v. United States*, 892 F.3d 1186, 1191, 1193-94 (Fed. Cir. 2018) (concluding that

the plaintiff's "characterization of its appeal . . . [was] unavailing" in view of the nature of

the relief that the plaintiff sought in its complaint and, consequently, that the court

lacked jurisdiction under 28 U.S.C. § 1581(i)).  Further, to determine whether the relief

provided under another subsection would be "manifestly inadequate," the Court

evaluates whether such relief would constitute an "exercise in *futility*, or [would be]

'incapable of producing any result; failing utterly of the desired end through intrinsic

defect; useless, ineffectual, [in] vain.'" *Hartford Fire*, 544 F.3d at 1294 (emphasis in

original) (quoting Oxford English Dictionary (2d ed. 1989)).  The party that seeks to

invoke the Court's jurisdiction "bears the burden of demonstrating manifest inadequacy."

*Intercontinental Chems., LLC v. United States*, 44 CIT __, __, 483 F. Supp. 3d 1232,

1241 (2020) (citing *Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987)).

        With respect to the binational review process set forth in Article 10.12 of the

USMCA, 28 U.S.C. § 1581(i)(2) provides that the Court's jurisdictional statute "shall *not*

confer jurisdiction over [a] . . . determination which is reviewable by . . . a binational

panel under [19 U.S.C. § 1516a(g)]."  28 U.S.C. § 1581(i)(2)(B) (emphasis supplied).

The legislative history of 28 U.S.C. § 1581(i)(2) indicates that Congress amended the

Court's jurisdictional statute to "assure that a litigant *cannot* invoke the CIT's 'residual

jurisdiction' . . . for the purpose of circumventing the binational panel system."  S. Rep.

100-509, at 35 (emphasis supplied).  The legislative history indicates further that

Congress intended for the amendment to "clarify" the "precise scope of the 'residual

jurisdiction' authority" with respect to determinations that are "reviewable" by a

binational panel so that it is clear that the Court's residual jurisdiction does not apply to

those determinations.  *Id.*; H.R. Rep. 103-361, 86 (1993), *as reprinted in* 1993

U.S.C.C.A.N. 2552, 2636.  Consequently, if a determination is reviewable by a

binational panel, 28 U.S.C. § 1581(i) "shall not confer jurisdiction" over the

determination.  28 U.S.C. § 1581(i)(2)(B); *see* 19 U.S.C. § 1516a(g); *Bhullar v. United*

*States*, 27 CIT 532, 544, 259 F. Supp. 2d 1332, 1341-42 (2003), *aff'd*, 93 F. App'x 218

(Fed. Cir. 2004).

**DISCUSSION**

**I.      Positions of the parties**

        Defendants argue that the court lacks subject matter jurisdiction under 28 U.S.C.

§ 1581(i) to hear the instant action.  *See* Defs. Br. at 6-10.  To start, defendants contend

that jurisdiction "is or could have been available" under 28 U.S.C. § 1581(c).  *Id.* at 10.

According to defendants, the instant action concerns a "[d]etermination that would have

been properly reviewable pursuant to section 1581(c), but for a request for binational

panel review of the determination."  *Id.* at 1, 10; *see* Request for Panel Review.

Defendants argue also that plaintiff characterizes inaccurately the instant action as

involving a challenge to Commerce's Cash Deposit Instructions.  *See* Defs. Reply Br. at

4.  According to defendants, plaintiff "attempts to create a distinction where none exists:

Commerce's instructions to [Customs] implementing Commerce's determination [in the

AR 2 Final Results] are not — in and of themselves — a separate determination."  *Id.*

        Defendants contend further that the relief provided to plaintiff under 28 U.S.C. §

1581(c) would not be "manifestly inadequate."  Defs. Br. at 9; *see* Defs. Reply Br. at 4.

Defendants argue that the "true nature" of the instant action is "twofold": (1) "a challenge

to the issue [that J.D. Irving] raised in [AR 2] — that Commerce ruled upon and that is

now on review with a binational panel"; and (2) "a challenge to the cash deposit rate

currently being applied to [J.D. Irving's] new entries" made on or after December 2,

2021.  Defs. Reply Br. at 4.  Defendants maintain that plaintiff can obtain a remedy that is not manifestly inadequate through a favorable binational panel decision as to Commerce's determination in the AR 2 Final Results and "any additional administrative review challenges" with respect to the cash deposits collected on J.D. Irving's entries made on or after December 2, 2021.  *Id.*  Consequently, defendants argue that the court lacks subject matter jurisdiction under 28 U.S.C. § 1581(i) and should dismiss the instant action.  *See* Defs. Br. at 6-10.

Plaintiff argues that the court has subject matter jurisdiction under 28 U.S.C. § 1581(i) to hear the instant action.  *See* Pl. Br. at 1-2.  Plaintiff argues that subject matter jurisdiction "is or could have been available" under 28 U.S.C. § 1581(c).  Compl. ¶ 5; *see* Pl. Br. at 7; *Intercontinental Chems.*, 44 CIT at __, 483 F. Supp. 3d at 1236 (citation omitted).  Plaintiff maintains separately that the Court has jurisdiction over the instant action because the action involves "a challenge to Commerce's 'administration and enforcement' of [the AR 2 Final Results] through its issuance of Cash Deposit Instructions to [Customs] . . . for which jurisdiction lies under 28 U.S.C. § 1581(i)(1)(D)." Pl. Br. at 9 (citations omitted).

Plaintiff contends further that any relief provided under 28 U.S.C. § 1581(c) would be "manifestly inadequate" because the binational panel "lack[s] equitable or injunctive powers" to order "Commerce to instruct [Customs] to reinstate J.D. Irving's lawful AD cash deposit rate retroactively as of December 2, 2021."  *Id.* at 6 (citing Compl. ¶¶ 2-7), 13 n.4, 14; *see* Oral Arg. Tr. at 13:02-08, ECF No. 23.  Consequently, plaintiff argues that it "could not obtain meaningful relief through USMCA binational panel review of the [AR 2 Final Results]," as the binational panel "would be unable to

order Commerce to instruct [Customs] to reinstate J.D. Irving's [AR 3] AD cash deposit

rate *retroactively*, depriving J.D. Irving of relief from Commerce's unlawful decision to

replace [the AR 3] rate with an AD cash deposit rate for [AR 2]."  Pl. Br. at 8 (emphasis

in original).  Plaintiff contends also that the relief provided through a challenge in one or

more ARs to the cash deposit rate applied to J.D. Irving's entries made on or after

December 2, 2021, would be manifestly inadequate because the court would be able to

provide plaintiff with its requested injunctive relief while a binational panel decision

would not even have precedential effect.  *See id.* at 7-8; Oral Arg. Tr. at 13:02-08,

16:01-09, 21-25; *cf.* 19 U.S.C. § 1516a(b)(3).  Consequently, plaintiff argues that the

court has subject matter jurisdiction under 28 U.S.C. § 1581(i) and should deny

defendants' motion to dismiss.  *See* Pl. Br. at 1-2.

## II.    Analysis

The court concludes that it lacks subject matter jurisdiction under 28 U.S.C. §

1581(i) to hear the instant action and grants defendants' motion to dismiss pursuant to

USCIT Rule 12(b)(1).  Accordingly, the court does not address defendants' motion with

respect to plaintiff's standing or defendants' motion to dismiss pursuant to USCIT Rule

12(b)(6) for failure to state a claim, as dismissal for lack of subject matter jurisdiction

renders these issues moot.  *See Intercontinental Chems.*, 44 CIT at __, 483 F. Supp. 3d

at 1235; *MS Solar Invs., LLC v. United States*, Slip Op. 22-140, 2022 WL 17581662, at

*2 (CIT Dec. 12, 2022) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

### A.    Whether subject matter jurisdiction to hear the instant action "is or could have been available" under 28 U.S.C. § 1581(c)

The court concludes that subject matter jurisdiction to hear the instant action "is

or could have been available" under 28 U.S.C. § 1581(c), *but for* the decision by

interested parties to request binational panel review of the AR 2 Final Results pursuant to Article 10.12 of the USMCA. *Intercontinental Chems.*, 44 CIT at __, 483 F. Supp. 3d at 1236 (citation omitted); *see* Request for Panel Review. 28 U.S.C. § 1581(c) provides the Court with subject matter jurisdiction with respect to "any civil action commenced under [19 U.S.C. § 1516a]." 28 U.S.C. § 1581(c). Further, 19 U.S.C. § 1516a(a)(2)(B)(iii) provides that "[a] final determination . . . by [Commerce] . . . under [19 U.S.C. § 1675]" constitutes a "[r]eviewable determination[]" under 28 U.S.C. § 1581(c). 19 U.S.C. § 1516a(a)(2)(B)(iii). Commerce published the AR 2 Final Results pursuant to 19 U.S.C. § 1675. *See AR 2 Final Results*, 86 Fed. Reg. at 68,472-73; 19 U.S.C. § 1675(a)(1). Therefore, as noted, subject matter jurisdiction to hear the instant action, which involves plaintiff's challenge to Commerce's determination in the AR 2 Final Results, not the "administration and enforcement" of that determination as those relate to Commerce's Cash Deposit Instructions — "could have been available" under 28 U.S.C. § 1581(c). *See AR 2 Final Results*, 86 Fed. Reg. 68,471 and accompanying Issues and Decision Memorandum (Dep't of Commerce Nov. 23, 2021) at 41-42; Compl. ¶ 5.

The instant action involves a challenge to Commerce's determination in the AR 2 Final Results notwithstanding plaintiff's characterization of the challenge as relating to Commerce's Cash Deposit Instructions. *See* Pl. Br. at 8-9. The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has stated that the Court is required to "look to the true nature of the action" to determine whether jurisdiction would be available under another subsection of 28 U.S.C. § 1581. *Hartford Fire*, 544 F.3d at 1293. The Court has applied this guidance in the context of disputes similar to that in the instant case as

to whether the "true nature" of an action involves a final determination by Commerce or

Commerce's instructions to Customs with respect to the "administration and

enforcement" of such a determination.  *See, e.g.*, *Mittal Canada, Inc. v. United States*,

30 CIT 154, 414 F. Supp. 2d 1347 (2006); *Wanxiang Am. Corp. v. United States*, 43 CIT

__, 399 F. Supp. 3d 1323 (2019); *Parkdale Int'l, Ltd. v. United States*, 31 CIT 720, 725,

491 F. Supp. 2d 1262, 1269 (2007) ("The general rule appears to be that liquidation

instructions lead to § 1581(i) jurisdiction *unless they directly implement* a 19 U.S.C. §

1516a determination, such as the final results of an administrative review under §

1675." (emphasis supplied)).  In these decisions, the Court has concluded that the "true

nature" of an action involves Commerce's instructions to Customs in circumstances in

which the instructions are *inconsistent with* or *contain a legal error that is distinct from*

Commerce's determination.  *Compare Mittal Canada*, 30 CIT at 160-61, 414 F. Supp.

2d at 1353 (stating that the action concerned whether "Commerce's liquidation

instructions contravene[d] the Final Results" and, consequently, that the plaintiff "ha[d]

defined its claim such that the Court ha[d] jurisdiction" under 28 U.S.C. § 1581(i)), *with*

*Wanxiang*, 43 CIT at __ & n.11, 399 F. Supp. 3d at 1331 & n.11 (concluding that the

contested guidance of Commerce "reiterated — . . . rather than deviat[ed] from — the

results of the administrative reviews" and, consequently, that the plaintiff could have

brought the action under 28 U.S.C. § 1581(c)), *and Intercontinental Chems.*, 44 CIT at

__, 483 F. Supp. 3d at 1240 ("Plaintiff argues that the issue is with the liquidation

instructions, but these instructions are based — and not inconsistently — on the Final

Results; the underlying issue is therefore not with the liquidation instructions but with the

Final Results.").

No inconsistency is present here.  Commerce's Cash Deposit Instructions are consistent with Commerce's determination in the AR 2 Final Results.  The record does not indicate that there is any "discrepancy" between Commerce's determination in the AR 2 Final Results with respect to the cash deposit rate assigned to J.D. Irving and Commerce's instructions to Customs.  *Intercontinental Chems.*, 44 CIT at __, 483 F. Supp. 3d at 1240.  Rather, Commerce's instructions implement the AR 2 Final Results in accordance with Commerce's determination.  *See id.*  Accordingly, the "true nature" of plaintiff's challenge in the instant action involves Commerce's determination in the AR 2 Final Results, *not* Commerce's instructions to Customs.  *Hartford Fire*, 544 F.3d at 1293.

Consequently, subject matter jurisdiction for this Court to hear plaintiff's challenge with respect to the AR 2 Final Results "could have been available" under 28 U.S.C. § 1581(c), *but for* the binational panel review that now is underway. *Intercontinental Chems.*, 44 CIT at __, 483 F. Supp. 3d at 1236 (citation omitted); *see* Request for Panel Review.

### B.    Whether the relief provided to plaintiff would be "manifestly inadequate"

The court concludes next that plaintiff does not meet its burden to demonstrate the manifest inadequacy of the relief available "either in this court under 28 U.S.C. § 1581(c) or before a binational panel" pursuant to Article 10.12 of the USMCA.  *Hylsa v. United States* (*Hylsa II*), 22 CIT 44, 46 (1998), *dismissed sub nom. HYLSA, S.A. de C.V. v. United States*, 185 F.3d 881 (Fed. Cir. 1999), *and dismissed sub nom. HYLSA, S.A. de C.V. v. United States*, 185 F.3d 881 (Fed. Cir. 1999); *see Miller & Co.*, 824 F.2d at 963 ("[T]he party asserting § 1581(i) jurisdiction has the burden to show how [the]

remedy would be manifestly inadequate."); S. Rep. 100-509, at 35 (indicating that

Congress "amend[ed] [28 U.S.C. § 1581(i)] to clarify that [this] section may not be used

to review an antidumping or countervailing duty determination which is reviewable by

the CIT under section [19 U.S.C. § 1516a(a)] or by a binational panel under [19 U.S.C.

§ 1516a(g)]").  In the instant action, plaintiff requests the following relief with respect to

its challenge to Commerce's determination: (1) declaratory relief as to the lawfulness of

the cash deposit rate assigned to J.D. Irving; and (2) the retroactive reinstatement of the

1.57% rate and the refund of excess cash deposits collected on entries made on or after

December 2, 2021.  *See* Compl. at 17.  The court addresses each request in sequence.

### 1.     Plaintiff's request for declaratory relief

The court addresses first plaintiff's request for declaratory relief.  *See id.*  The

binational panel has the authority to reach a decision as to the lawfulness of

Commerce's determination with respect to the cash deposit rate assigned to J.D.

Irving.[4]  Article 10.12 ¶ 8 of the USMCA provides that "[t]he panel may uphold a final

determination [by Commerce] . . . or remand it for action not inconsistent with the

panel's decision."  USMCA, art. 10.12 ¶ 8.  Further, 19 U.S.C. § 1516a(g)(7)(A) provides

that "[i]f a determination is referred to a binational panel . . . and the panel . . . makes a

decision remanding the determination . . . [Commerce] . . . shall, within the period

specified by the panel . . . take action not inconsistent with the decision of the panel."

---

[4] The parties do not dispute that the binational panel has the authority to reach a decision with respect to the lawfulness of Commerce's determination; plaintiff argues instead that binational panels lack powers in equity and that the panel "would be unable to order Commerce to instruct [Customs] to reinstate J.D. Irving's . . . cash deposit rate *retroactively*" should the panel reach a decision in plaintiff's favor.  Pl. Br. at 8 (emphasis in original), 11 ("The USMCA's mere ability to review the same legal issue, however, does not mean the panel can provide adequate relief.");  *see* Defs. Br. at 9-10.

19 U.S.C. § 1516a(g)(7)(A).  On January 11, 2022, plaintiff filed a Notice of Appearance before the binational panel.  Letter from White & Case LLP, to USMCA Secretariat, U.S. Sec'y, re: USMCA Panel Review — USA-CDA-2021-10.12-04 — Notice of Appearance (Jan. 11, 2022); *Art. 10.12 Rules of Procedure*, R. 45 ¶ 1(d)(iii).  As such, plaintiff is entitled as an "interested person" to participate in the proceedings before the panel and bring the same challenge that J.D. Irving brought as a respondent before Commerce. *Art. 10.12 Rules of Procedure*, Rs. 5, 45 ¶ 1, 61 ¶¶ 1-2.  Upon a favorable panel decision with respect to such a challenge to the lawfulness of Commerce's determination, the panel would have the authority to remand the determination to Commerce, which would then be required to "take action not inconsistent with" the panel's decision.  *See* USMCA, art. 10.12 ¶ 8; 19 U.S.C. § 1516a(g)(7)(A). Consequently, the relief available to plaintiff through binational panel review with respect to its request for declaratory relief is not manifestly inadequate.

   **2.**  **Plaintiff's request to reinstate retroactively the cash deposit rate of 1.57% and to refund excess cash deposits**

  The court addresses next plaintiff's request to reinstate retroactively the cash deposit rate of 1.57% and to refund excess cash deposits collected on entries made on or after December 2, 2021.  *See* Compl. at 17.  Plaintiff contends that only "injunctive relief" provided by this Court would constitute an adequate remedy with respect to the refund of excess cash deposits collected on entries made on or after December 2, 2021 — plaintiff's second request.  Pl. Br. at 8.  Plaintiff notes that binational panels lack the powers in equity that this Court possesses and that the panel "would be unable to order Commerce to instruct [Customs] to reinstate J.D. Irving's . . . cash deposit rate

*retroactively*" with respect to entries made on or after December 2, 2021.  *Id.* at 8

(emphasis in original), 11.

> The court does not find this argument persuasive.  Plaintiff retains the recourse

to obtain an adequate remedy with respect to its request, as "eventually review [of

plaintiff's challenge] could be had at the conclusion of administrative proceedings, either

in this court under 28 U.S.C. § 1581(c) or before a binational panel."  *Hylsa II*, 22 CIT at

46; *see Sunpreme*, 892 F.3d at 1191 (stating that when adequate "relief is prospectively

and realistically available under another subsection of 1581, invocation of [28 U.S.C. §

1581(i)] is incorrect" (quoting *Chemsol, LLC v. United States*, 755 F.3d 1345, 1354

(Fed. Cir. 2014)) (internal quotation marks omitted)); *Jerlian Watch Co. v. U.S. Dep't of

Com.*, 597 F.2d 687, 692 (9th Cir. 1979) ("It is true that injunctive and declaratory relief

[are] . . . more desirable remed[ies] in plaintiffs' view, but 'the mere fact that more

desirable remedies are unavailable [due to lack of jurisdiction] does not mean that

existing remedies are inadequate.'" (citation omitted)).  An alternative remedy is

available to plaintiff through its challenge in one or more ARs to the collection of cash

deposits on plaintiff's entries made on or after December 2, 2021, at the contested rate

of 11.59%.[5]  *See Capella Sales*, 40 CIT __, __, 180 F. Supp. 3d 1293, 1303 (2016) ("An

---

[5] J.D. Irving would be entitled to bring such a challenge in an AR 4 with respect to the
cash deposit rate applied to J.D. Irving's entries made between December 2, 2021, and
December 31, 2021, as these dates occurred during the fourth period of review of the
Softwood Lumber Order.  *See Softwood Lumber Order*, 83 Fed. Reg. 350; *AR 2 Final
Results*, 86 Fed. Reg. 68,471.  For entries made between January 1, 2022, and
December 31, 2022 — the fifth period of review — J.D. Irving would be entitled to bring
such a challenge in an AR 5.  *See Softwood Lumber Order*, 83 Fed. Reg. 350; *AR 2
Final Results*, 86 Fed. Reg. 68,471.  For entries made between January 1, 2023, and
(footnote continued)

interested party may challenge the cash deposit rate by requesting [that] Commerce

conduct an administrative review of its entries that were subject to that cash deposit

rate." (citing 19 U.S.C. § 1675(a)(1))).  Should plaintiff bring such a challenge (or

challenges) before Commerce, following Commerce's publication of the final results of

the respective AR, plaintiff would be entitled to appeal to this Court any determination

with which plaintiff might disagree.[6]  *See Valeo N. Am., Inc. v. United States*, 41 CIT __,

__, 277 F. Supp. 3d 1361, 1365 (2017).

      Three considerations demonstrate that this alternative remedy would not be

manifestly inadequate with respect to plaintiff's requested relief.  First, the alternative

remedy would "produc[e]" an adequate "result" with respect to plaintiff's challenge to the

cash deposit rate applied to its entries made on or after December 2, 2021.  *Hartford*

*Fire*, 544 F.3d at 1294 (citation omitted) (internal quotation marks omitted).  The Federal

Circuit has held that a remedy is "manifestly inadequate" if the remedy constitutes an

"exercise in futility, or [is] 'incapable of producing any result; failing utterly of the desired

end through intrinsic defect; useless, ineffectual, [in] vain.'"  *Id.* (emphasis omitted).

Plaintiff states that its challenge concerns "[t]he deposit rate applie[d] to [J.D. Irving's]

entries *going forward*" — *i.e.*, the rate applied to entries made on or after December 2,

2021.  Oral Arg. Tr. at 12:17-18 (emphasis supplied); *see* Pl. Br. at 13-14; *Sunpreme*,

---

December 31, 2023 — the sixth period of review — J.D. Irving would be entitled to bring
such a challenge in an AR 6.  *See Softwood Lumber Order*, 83 Fed. Reg. 350; *AR 2*
*Final Results*, 86 Fed. Reg. 68,471.

[6] Moreover, should interested parties request binational panel review with respect to the
final results of one or more such ARs pursuant to Article 10.12 of the USMCA, J.D.
Irving would be entitled as an "interested person" to bring its challenge before the
respective panel.  *See* 19 U.S.C. § 1516a(g)(8)(A)(i); *Art. 10.12 Rules of Procedure*, Rs.
5, 38 ¶ 1(b), 45 ¶ 1.

892 F.3d at 1193.  Plaintiff is entitled to challenge in one or more ARs the cash deposit

rate applied to entries made on or after December 2, 2021.  *See Capella Sales*, 40 CIT

at __, 180 F. Supp. 3d at 1303.  Should plaintiff bring such a challenge (or challenges),

plaintiff "can be made whole" and receive its requested refund "if [plaintiff's] claims are

ultimately successful."  *Valeo*, 41 CIT at __ n.6, 277 F. Supp. 3d at 1365 n.6.  The

availability to plaintiff of a refund plus interest for any overpaid cash deposits indicates

that this alternative remedy neither is futile nor "incapable of producing any result" with

respect to plaintiff's "desired end."  *Hartford Fire*, 544 F.3d at 1294 (citation omitted)

(internal quotation marks omitted); *see* 19 U.S.C. § 1673f(b)(2), 1677g(a); 19 C.F.R. §

351.212.  Moreover, this alternative remedy is not manifestly inadequate

notwithstanding that plaintiff would be required to participate in administrative

proceedings — as well any potential appeals or panel reviews — prior to obtaining such

relief.  *See Valeo*, 41 CIT at __, 277 F. Supp. 3d at 1365 ("Neither the burden of

participating in the administrative proceeding nor the business uncertainty caused by

such a proceeding is sufficient to constitute manifest inadequacy." (citations omitted));

*MacMillan Bloedel Ltd. v. United States*, 16 CIT 331, 332 (1992); *cf. Int'l Custom Prod.,*

*Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2007) ("[D]elays inherent in the

statutory process do not render [a remedy] manifestly inadequate." (citing *Am. Air*

*Parcel Forwarding Co. v. United States*, 718 F.2d 1546, 1551 (Fed. Cir. 1983))).

The second consideration that supports the court's conclusion is that plaintiff's

payment of cash deposits at the contested rate of 11.59% while plaintiff participates in

administrative proceedings — as well as any potential appeals, including panel reviews

— would not render the alternative remedy manifestly inadequate.  *See Int'l Custom*

*Prod.*, 467 F.3d at 1327 ("[M]ere allegations of financial harm . . . do not make the

remedy established by Congress manifestly inadequate." (citations omitted) (internal

quotation marks omitted)).  This conclusion is consistent with the court's decision in

*Valeo*, 41 CIT ___, 277 F. Supp. 3d 1361.  In *Valeo*, the court held that it lacked

jurisdiction under 28 U.S.C. § 1581(i) to hear the plaintiffs' challenge to Commerce's

preliminary determination in an AD investigation of certain aluminum foil from China.

*See id.* at ___, 277 F. Supp. 3d at 1363.  The court stated that the plaintiffs sought relief

through the court's exercise of jurisdiction under 28 U.S.C. § 1581(i) so that the

plaintiffs' "imports [would] not [be] subject to the collection of cash deposits in the

interim period between the publication of the preliminary determination and the final

determination."  *Id.* at ___, 277 F. Supp. 3d at 1366 (citation omitted).  However, the

court concluded that the remedy available through the exercise of jurisdiction under 28

U.S.C. § 1581(c) *subsequent to* Commerce's publication of the final determination was

not manifestly inadequate, as the plaintiffs would receive a refund for any overpaid cash

deposits if they prevailed.  *See id.*  Further, the court explained that "exposure to cash

deposits is *not a recognized harm* that would render the available relief . . . manifestly

inadequate," *id.* at ___ n.6, 277 F. Supp. 3d at 1365-66 n.6 (emphasis supplied) (citing

*MacMillan*, 16 CIT at 333), as the payment of cash deposits "is an ordinary

consequence of the statutory scheme."  *Id.* at ___, 277 F. Supp. 3d at 1366; *cf. Shanghai

Tainai Bearing Co. v. United States*, 46 CIT ___, ___, 582 F. Supp. 3d 1299, 1310 (2022)

("America's retroactive system, financially inconvenient as it may be, is the course

adopted by Congress and committed to Commerce and Customs to enforce." (citation

omitted)).

The third consideration that supports the court's conclusion is that the alternative remedy is not manifestly inadequate notwithstanding plaintiff's assertion that this remedy would "fall[] well short of [a] remedy that this Court has the authority to provide." Oral Arg. Tr. at 13:09-10.  Contrary to plaintiff's argument, that this Court possesses the powers in equity to provide plaintiff with its requested injunctive relief does not render the alternative remedy "manifestly inadequate."  *Id.*; *see* 28 U.S.C. § 2643(c)(1) ("[T]he Court of International Trade may . . . order any . . . form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition.").

To support its argument, plaintiff points to the *Cooper Tire* decision, in which the court issued an injunction ordering Commerce to reinstate a cash deposit rate with respect to the plaintiff's entries.  *See* Pl. Br. at 7-8 (citing *Cooper Tire & Rubber Co. v. United States*, 41 CIT __, __, 217 F. Supp. 3d 1373, 1377, 1384 (2017)), 12.  However, the *Cooper Tire* court exercised its discretion to issue such injunctive relief in view of the unusual circumstances presented in that case.  *See generally Cooper Tire*, 41 CIT __, 217 F. Supp. 3d 1373; *Cooper Tire & Rubber Co. v. United States*, Slip Op. 17-130, 2017 WL 4250812 (CIT Sept. 25, 2017).  The court concluded that Commerce assigned unlawfully to the plaintiff a cash deposit rate that "was unrelated to [the plaintiff's] future antidumping duty liability" and stated that the plaintiff was entitled to its requested remedy — *i.e.*, for the court to "order [Commerce] on remand to determine [the plaintiff's] AD cash deposit rate the same as all other separate rate respondents." *Cooper Tire*, 41 CIT at __, 217 F. Supp. 3d at 1380, 1383.  Nonetheless, the court explained that the plaintiff had not yet "sought injunctive or other equitable relief as to

the implementation of the remedy it is pursuing." *Id.* at __, 217 F. Supp. 3d at 1383.

Accordingly, the plaintiff moved subsequently for a preliminary injunction and the court

ordered the parties to "consult with the objective of producing an agreed-upon proposed

injunction for the Court's consideration." *See Cooper Tire*, Ct. No. 15-00251, Pls.' Mot.

for Prelim. Inj. (May 10, 2017), ECF No. 49, *and* Order (May 15, 2017), ECF No.

51.  The parties complied with the court's order and filed a proposed injunction, which

the court issued thereafter.  *See Cooper Tire*, Ct. No. 15-00251, Order (June 1, 2017),

ECF No. 53.

     Plaintiff's assertion and reference to *Cooper Tire* with respect to this Court's

powers in equity also do not provide a legal basis to conclude that the availability of a

*preferred* or *more desirable* remedy — *i.e.*, a court-issued injunction — renders an

alternative form of relief "manifestly inadequate."  *See Am. Air Parcel*, 718 F.2d at 1551.

This conclusion is consistent with the decision of the U.S. Court of Appeals for the

Second Circuit ("Second Circuit") in *J. C. Penney Co. v. U.S. Treasury Dep't* (*J. C.

Penney II*), 439 F.2d 63 (2d Cir. 1971).[7]  In *J. C. Penney*, the plaintiff, an importer of

television sets from Japan, sought to challenge in district court the decision of the U.S.

Treasury Department to conduct an investigation as to whether the imported

---

[7] The Second Circuit decided *J. C. Penney* prior to the establishment of the U.S. Court
of International Trade and the enactment of 28 U.S.C. § 1581(i).  *See* Customs Courts
Act of 1980. Pub. L. No. 96-417, 94 Stat. 1727 (1980) (codified as amended in scattered
sections of 28 U.S.C.).  The enactment of 28 U.S.C. § 1581(i) "transferred the subject
matter jurisdiction of the district courts [with respect to the enumerated civil actions] to
the Court of International Trade."  *Am. Air Parcel*, 718 F.2d at 1551 n.4 (citing *United
States v. Uniroyal, Inc.*, 69 CCPA 179, 187 n.9, 687 F.2d 467, 475 n.9 (1982)); *see* H.R.
Rep. No. 96-1235, at 33 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 3729, 3745 ("Section
201 of H.R. 6394 added a new section 1581(i) to Title 28, U.S.C. . . . to eliminate the
confusion which currently exists as to the demarcation between the jurisdiction of the
federal district courts and the Court of International Trade.").

merchandise had been sold at less than fair value.  *See id.* at 64; *J. C. Penney Co. v.*

*U.S. Dep't of Treasury* (*J. C. Penney I*), 319 F. Supp. 1023 (S.D.N.Y. 1970).  The district

court "dismiss[ed] the plaintiff's complaint for lack of subject matter jurisdiction" and

concluded that the plaintiff "must seek its relief against the government in the [U.S.]

Customs Court."  *J. C. Penney II*, 439 F.2d at 64-65; *see J. C. Penney I*, 319 F. Supp. at

1028-31.  On appeal, the plaintiff contended that the district court had jurisdiction over

the action on the basis that "no adequate relief may be obtained in" the Customs Court.

*J. C. Penney II*, 439 F.2d at 68.  The plaintiff argued that the Customs Court lacked the

equitable power to provide the plaintiff with its requested relief, including the "power to

require the holding of a hearing" with respect to the plaintiff's challenge.  *Id.*; *cf. Flintkote*

*Co., Glens Falls Div. v. United States*, 82 Cust. Ct. 305, 306, 467 F. Supp. 626, 628

(1979).  The Second Circuit rejected the plaintiff's argument and concluded that "an

adequate remedy [was] available . . . in the Customs Court" through "the obtaining of

refunds of special dumping duties which may have been improperly assessed and

paid."  *J. C. Penney*, 439 F.2d at 68.  The court stated further that "[t]hough it may be

true that the ordering of a hearing would be a more desirable form of relief from [the

plaintiff's] point of view than the obtaining of refunds, the mere fact that more desirable

remedies are unavailable does not mean that existing remedies are inadequate."  *Id.*;

*see Jerlian Watch*, 597 F.2d at 692.  Similarly, in the instant action the mere existence

of a potential remedy that plaintiff might prefer or find "more desirable" — *i.e.*, a court-

issued injunction — does not render the alternative remedy manifestly inadequate.

Moreover, the alternative remedy is not "manifestly inadequate" notwithstanding

plaintiff's argument that a Court decision with respect to plaintiff's challenge would have

precedential effect while a panel decision would not.  *See* Oral Arg. Tr. at 16:01-09, 21-25; 19 U.S.C. § 1516a(b)(3).  Plaintiff's argument proves too much.  Applying plaintiff's reasoning, because a panel decision with respect to any legal issue lacks precedential effect, a panel decision as to any legal issue before it would be manifestly inadequate.  *See* 19 U.S.C. § 1516a(b)(3).  In a similar way, plaintiff's reasoning would lead to the conclusion that the Court's subject matter jurisdiction exists under 28 U.S.C. § 1581(i) with respect to *any* determination for which panel review is requested.  This conclusion, in turn, would contravene the intent of Congress in amending 28 U.S.C. § 1581(i) to "assure that a litigant cannot invoke the CIT's 'residual jurisdiction' . . . for the purpose of circumventing the binational panel system."  S. Rep. 100-509, at 35; *see* H.R. Rep. 103-361, at 86.

## CONCLUSION

In *The Jungle Book*, the 1967 animated film based on the 1894 novel by Rudyard Kipling,[8] Mowgli, a young orphan, is found abandoned in the jungle and rescued by Bagheera, a black panther.  Two wolves, Raksha and Rama, adopt Mowgli and raise him along with their own cubs.  Over ten years, Mowgli — known affectionately as "man-cub" — learns the ways of his forest (which Kipling likely based on the forests in the vicinity of the city of Seoni in Madhya Pradesh, India), but Mowgli's animal guardians realize that he must return eventually to be with other humans.

One night, Akela, the leader of the wolf pack, announces that Shere Khan, a Bengal tiger who does not especially care for humans, has appeared in the jungle.  The

---

[8] THE JUNGLE BOOK (Walt Disney Productions 1967); Rudyard Kipling, *The Jungle Book* (1894).

pack reaches the difficult decision that Mowgli must leave the forest and return to

human society.

> Akela: "Shere Khan will surely kill the boy and all who try to protect him.  Now,
> are we all in agreement as to what must be done?"
>
> [Wolves nod].
>
> Akela: "Now it is my unpleasant duty to tell the boy's father.  Rama!  Come over
> here, please."
>
> Rama: "Yes, Akela?"
>
> Akela: "The council has reached its decision.  Man-cub can no longer stay with
> the pack.  He must leave at once."
>
> Rama: "Leave?"
>
> Akela: "I am sorry, Rama.  There is no other way."
>
> Rama "But-but the man-cub is-is like my own son.  Surely he's entitled to the
> protection of the pack."
>
> Akela: "But, Rama, even the strength of the pack is no match for the tiger."
>
> Rama: "But the boy cannot survive alone in the jungle."

Bagheera then interjects to offer a potential solution to the quandary in which the

pack finds itself.

> Bagheera: "Akela.  Perhaps I can be of help."
>
> Akela: "You, Bagheera?  How?"
>
> Bagheera: "I know of a man-village where he'll be safe.  Mowgli and I have taken
> many walks into the jungle together.  I'm sure he'll go with me."
>
> Akela: "So be it.  Now there's no time to lose.  Good luck."

* * *

For the reasons discussed, the court concludes that it lacks subject matter jurisdiction under 28 U.S.C. § 1581(i) to hear the instant action.  Accordingly, the court grants defendants' motion to dismiss pursuant to USCIT Rule 12(b)(1).  Pursuant to the court's order of November 21, 2022, *see* Order, ECF No. 26, which stays consideration of "plaintiff's motion to consolidate Court Nos. 21-00641 and 22-00256 pending resolution of the jurisdictional issue raised in the instant action . . . after appeals, if any, are exhausted," the parties shall file a joint status report within 14 days of the date that the stay expires.

Judgment will enter accordingly.

/s/      Timothy M. Reif
                                                                        Judge

Dated:   January 25, 2023
            New York, New York